CAHOONE BARNET MANUF'G CO. *v.* RUBBER & CELLULOID HARNESS CO. *et al.*

*(Circuit Court D. New Jersey.  March 24, 1891.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—CORPORATE ACT—LIABILITY OF OFFICERS.
   In an action for infringement of letters patent, individual defendants cannot shield themselves by the plea that the acts complained of were solely the acts of defendant corporation, and that whatever was done by them in manufacturing and selling the patented article was done only in their capacity as officers and agents thereof, and not otherwise.

2. SAME—DESIGN PATENT—NOVELTY.
   Novelty is essential to a design patent, under Rev. St. § 4929, and the mere adaptation of old devices, forms, or designs to new purposes of ornamentation, however exquisite the result, will not sustain a patent.

3. SAME.
   Design patent No. 16,114, of date May 26, 1885, to Samuel E. Tompkins and John F. Goodsell, for a design for the ornamentation of harness, consisting of overlapping and flattened spiral convolutions of wire, was anticipated by a patent granted in 1866 to one Picot for a similar ornamentation of the semicircular combs used by children to pin back the hair from the forehead, and is void.

In Equity.  Bill for injunction.
*Coult & Howell*, for complainant.
*J. C. Clayton*, for defendants.

GREEN, J.  The bill of complaint in this case was filed to enjoin an alleged infringement of design patent No. 16,114, granted to Samuel E. Tompkins and John F. Goodsell, assignors to the complainant, for a design for the ornamentation of harness.  The letters patent bear date May 26, 1885, and the claim of the patentees is stated to be "for a design for the ornamentation of harness, consisting of a piece of harness having thereupon the flattened spiral convolutions overlapping and resting upon each other, and placed at a slight distance from the edge of the piece, so that both the plain edge of the piece and the scalloped edge of the

spiral show out in contrast;" or, as stated in the specification, "the design consists of a spiral flattened, as shown, so that the individual coils or helices thereof lap over and rest upon each other." With the application for letters patent were filed certain drawings more fully illustrating the nature, object, and use of the design,—thus Figs. 1 and 3 were edge views of brow-bands of bridles; Fig. 2 showed a harness rosette; Fig. 4 was the plan of a pad-housing; and Fig. 5 was a bridle-winker; each ornamented by the coils of spiral wire, flattened and arranged, as above stated, and illustrating the effect produced by the use of the design in the manner prescribed. The bill charges that the defendants are actually engaged in manufacturing, and in putting on the market for sale, at a lower price than that fixed by the complainant, harness trimmed and ornamented with designs, in all material respects a copy of and an infringement upon the design secured to them by letters patent, as heretofore stated; and an injunction is prayed for, with the usual reference for computation of damages already sustained. The defendants are the Rubber & Celluloid Harness Trimming Company, Andrew Albright, Samuel E. Tompkins, and John F. Goodsell. The defendant corporation has answered separately, and the individual defendants, Albright, Tompkins, and Goodsell, have filed a joint and several separate answer. In their answer these individual defendants aver—

"That the said Albright is the president of the Rubber & Celluloid Harness Trimming Company; that the said Samuel E. Tompkins owns some of the stock of said company; that the said John F. Goodsell is one of the foremen of said company; that the acts complained of in said bill, if done at all, were done solely by said company, and that none of these defendants, in their capacity as individuals, have ever done anything herein in violation of any rights of the complainant; that whatever they may have done has been done as officer, member, or foreman of the Rubber & Celluloid Harness Trimming Company, which alone is responsible for the wrong, if any there be, complained of."

Under what circumstances and to what extent an officer or a stockholder of a corporation can be held personally responsible for infringements of letters patent committed by the corporation are open questions. The adjudications of the courts are contradictory. In the case of *Nickle Co.* v. *Worthington*, 13 Fed. Rep. 392, Judge LOWELL held that an action at law for damages cannot be maintained against officers, directors, or shareholders of a corporation which infringes a patent, even where such persons personally conducted the business which constituted the infringement. This opinion was evidently based upon the principle that the artificial person, the corporation alone, is the guilty actor, and that none of its members or officials legally participate, as individuals, in acts done by it. On the other hand, in the case of *National Car-Brake Shoe Co.* v. *Terre Haute Manuf'g Co.*, 19 Fed. Rep. 514, Judge WOODS, in charging the jury, substantially held the opposite doctrine, that, in an action at law for infringment of a patent, all parties who participate in the infringement are liable, although some are simply acting as officers of a corporation. All parties who take part in a tort or trespass are liable. A man cannot retreat behind a corporation, and escape liability

for a tort in which he actually participates. And this doctrine has been sanctioned and enforced in *Goodyear* v. *Phelps*, 3 Blatchf. 91; *Poppenhusen* v. *Falke*, 4 Blatchf. 495; *Iowa Barb Steel Wire Co.* v. *Barbed Wire Co.*, 30 Fed. Rep. 123; and in other cases which need not be cited. It is based upon the rule that every voluntary perpetrator of a wrongful act of manufacture, use, or sale of a patented article becomes *ipso facto* an infringer, and is legally responsible; and it therefore regards officers, directors, and agents employing or authorizing or assenting to the use of the patented invention as infringers, and personally responsible to the patentee. A third class of cases adopts the acceptance of the benefit, pecuniary or otherwise, springing out of the use or the sale of the patented article, or from the infringing act, as furnishing the test of liability. All who derive such benefit are to be reckoned as guilty of the tortious act which makes it possible.

The safer rule of these, as it seems to me, is the second. Its enforcement will render all agents of a corporation who perform acts of infringement, and all stockholders and directors and other officers who, in the conduct of the ordinary business of the corporation, authorize infringing acts, personally responsible to the owners of the patent. Such rule is "in harmony with other doctrines of the law, sufficiently protects the patentee, and justly punishes those whose willful acts place them on the same footing with individual infringers." 3 Rob. Pat. § 912.

The proofs in this cause show that Albright as president of the defendant corporation, Goodsell as foreman, and Tompkins as general supervisor of the whole of the leather department, knew of and assented to and impliedly authorized the manufacture and sale of harness bearing an ornamentation alleged to be an infringement of complainant's design as patented. Under such circumstances, I do not think they can shield themselves from responsibility by charging the infringing acts, if they are such, to be the acts of the corporation alone. The infringing acts are, indeed, the acts of the defendant corporation; but as well are they the acts of the individual defendants, by whose authority and direction and assistance the corporation was enabled to and did infringe. The allegations of the bill are well founded.

This brings us to the consideration of the more important question, whether the defendants, corporate or individual, have been guilty of any infringement of the rights of the complainant. The letters patent granted to the complainants secure to them a "design." They were granted under section 4929 of the Revised Statutes of the United States, which provides "that any person who by his industry, genius, efforts, and expense has invented and produced any new and original design for a manufacture, bust, statue, * * * or any new, useful, or original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or publication thereof, or patented or described in any printed publication, may," etc., "obtain a patent therefor." It is plain from the reading of this section that, to obtain a grant of letters patent for a design, the applicant must show the presence in his design of originality, in some degree at

least.   In other words, appropriation of the invention of another, though the design may disclose alteration, does not justify, nor is it to be rewarded by, the issuance of letters patent creating a monopoly.   Thus in *Theberath* v. *Trimming Co.*, 15 Fed. Rep. 246, in speaking of patents for designs, Judge Nixon in this court said:

"Patents for designs differ from patents for inventions or discoveries in this respect: that they have reference to appearance rather than utility.   Their object is to encourage the arts of decoration more than the invention of useful products.   A picture or design that merely pleases the eye is a proper subject for such a patent, without regard to the question of utility, which is always an essential ingredient in an invention or discovery patent.   But, notwithstanding these differences, all regulations and provisions that are applicable to the obtaining or protecting of patents of the latter kind are by section 4933 of the Revised Statutes, made applicable also to design patents."

I think it may be taken as settled that, to sustain a design patent, there must be exhibited in the production of the design an exercise of the inventive or original faculty as clear and of as high degree as is called for in patents for inventions or discoveries.   In the latter class there must be novelty and utility; in the former, beauty and originality.   In both, the final production must have been engendered by the exercise of brain power, and to such an extent that it may be said to be born of genius.   If this be correct, it follows necessarily that the adaptation of old devices, or of old forms or designs, though never so beautiful, to new purposes or ornamentations, however exquisite the result, is not invention.   It is not begotten of originality.   And so it is forbidden for one to choose an existing design, simply to devote it to a new use, and, because of such new use, successfully to claim the benefits of the patent laws.   This principle was distinctly affirmed in *New York Belting & Packing Co.* v. *New Jersey Car Spring Co.*, 30 Fed. Rep. 785.   This was an action for infringement of letters patent for a "design for a rubber mat." The patentee in the description states that, "in accordance with the design, the mat gives, under the light, different effects, according to the relative position of the person looking at it."   This was accomplished by stamping upon the rubber mat the design, consisting of corrugations, depressions, or ridges in parallel lines, combined or arranged relatively, to produce variegated, kaleidoscopic, *moire*, stereoscopic, or similar effects.   The patent was attacked upon the score of want of novelty.   In giving the opinion of the court, Judge Wallace said:

"It was not new to produce contrasts and variations in light and shade, or stereoscopic effects, by depressions or elevations in the surface of materials. It was old to do this by arranging them in parallel lines, as in wool, plaster, and corduroy cloth.   It is not novelty which will sustain a design patent to transfer to rubber, or to a rubber mat, an effect or impression on the eye, which has been produced upon other materials or articles by contrast, or variation of light and shade.   The design of this patent is not new, unless it embodies a new impression or effect produced by an arrangement or configuration of lines, which introduces new elements of color or form.   This is not claimed."

—And the patent was thereupon held void for want of novelty. The effect of this opinion is to declare that the application of a design to rubber mats, which had been theretofore applied in the treatment of articles of wool, or of plaster, or of corduroy cloth, involved no invention whatever; was totally lacking in novelty. Or, in other words, the transfer of a design used for the ornamentation of an article of one material to an article of another material, though such transfer may exquisitely enrich and beautify, is not entitled to the protection of letters patent. Mere handiwork, without brain-work, stands on too low a plane to warrant or to justify the grant of monopoly.

Applying this principle to the case at bar, it seems to me that this patent cannot be sustained. The proofs show that this design, exact in every particular, was patented and in use as early as 1866. The claim of the complainant's patent is for a "design for ornamentation of harness, consisting of a piece of harness having thereupon flattened spiral convolutions overlapping and resting upon each other, and placed at a slight distance from the edge of the piece, so that the plain edge of the piece and the escaloped edge of the spiral show out in contrast." In 1866 one Picot was granted a patent for a design for long combs, used by children to pin back the hair from the forehead and eyes. The design is a flattened spiral of wire attached, for ornamentation, to a long semi-flexible rubber comb, semicircular in shape. An inspection of the drawing annexed to the patent shows this flattened spiral, with coils lapping upon each other, affixed to the comb. The spiral is thus described in the specification:

"The loops are made from one piece of wire, which is bent and twisted, so as to have loops of desired size, which are pressed and flattened so as to form a smooth and continuous band. They are formed so near each other that their contiguous edges will touch or lap one upon the other in succession from right to left, and *vice versa;* the general effect, however, being the same. This band or border of loops is placed around the upper part of the face of the comb in a line parallel with its top edge, and is held to the comb by rivets or pins, which project out therefrom."

An inspection of this design shows it to be identical with that claimed by the complainants, and it certainly cannot be admitted that there was involved any invention in the act of tearing it off from the comb of the child,—it might well and aptly be termed the "brow-band" of the child,—and affixing it to the brow-band of the horse's bridle. The complainant's design is apparently identical, also, with Crane's design, as represented by Fig. 4 in the drawing attached to his patent for harness trimming, granted January 30, 1883; with Hartman's design, represented by Fig. 5 in the drawing attached to his patent for a bridle, granted June 29, 1880; with Mingis' design for a round comb, for which letters patent were granted January 1, 1867; and practically identical with other patented designs which it is not necessary to specify Certainly a total lack of novelty and originality in the complainant's design is clearly shown. There is, indeed, an adaptation of old designs to new

purposes, but that is not invention. Taking the principle, heretofore stated, as the criterion, to-wit, that in a patentable design there must be exhibited originality and beauty, it is apparent that this patent cannot be sustained. The design, which is its subject, may be beautiful; it certainly is not novel, nor is it original with the patentee. The injunction heretofore granted is dissolved, and the bill is dismissed, with costs.