NEW YORK BELTING & PACKING CO. v. NEW JERSEY CAR SPRING & RUBBER CO.

(Circuit Court of Appeals, Second Circuit. December 6, 1892.)

1. DESIGN PATENTS—LIMITATION OF CLAIM—PRIOR ART—RUBBER MATS.

Design patent No. 11,208, issued March 27, 1879, to George Woffenden, for a design for rubber mats in which kaleidoscopic, mosaic, and moire effects are produced by a series of parallel corrugations, which in different sections of the mat make angles with, or are deflected to meet, the corrugations of other sections, must, in view of the prior state of the art, as shown especially by the English patent to Fanshawe and Jacques of November 29, 1860, No. 2,935, be limited to the specific design shown in the drawing. 48 Fed. Rep. 556, affirmed.

2. SAME—INFRINGEMENT.

Although the patentee in his specifications says that the square mat exhibited in the drawing might be made "oblong or other desired shape," the patent is not infringed by an oblong mat having much the same general appearance as the mat of the patent, but in which the exact arrangement is not such as would necessarily result from an attempt to adapt the patentee's design to an oblong mat. 48 Fed. Rep. 556, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Bill by the New York Belting & Packing Company against the New Jersey Car Spring & Rubber Company for infringe-

ment of design patent No. 11,208, issued March 27, 1879, to George Woffenden, assignor to complainant. The circuit court on a demurrer to the bill held that the patent was invalid, (30 Fed. Rep. 785,) and from a judgment entered in pursuance thereof an appeal was taken to the supreme court of the United States. The supreme court reversed the judgment and remanded the cause, (11 Sup. Ct. Rep. 193,) and on a final hearing in the circuit court an interlocutory decree was entered sustaining the patent as to the specific design shown therein, and declaring infringement, (48 Fed. Rep. 556.) From this decree, defendant appeals. Reversed.

Arthur v. Briesen, for appellant.
Benjamin F. Lee, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The patent is for a design for rubber mats. The specification sets forth that—

"In accordance with this design the mat gives under the light different effects, according to the relative position of the person looking at it. If the person changes his position continuously, the effects are kaleidoscopic in character. In some cases moire effects, like those of moire or watered silk, but generally mosaic effects, are produced. Stereoscopic effects, also, or the appearance of a solid body or geometric figure, may at times be given to the mat, and under proper conditions an appearance of a depression may be presented. The design consists in parallel lines of corrugations, depressions, or ridges, arranged to produce the effects as above indicated."

Then follows a reference to a drawing of the mat and a description of the same, after which the specification proceeds:

"The above forms simply one of the many ways in which my invention may be carried into effect. The corrugations in the center and outer border need not extend entirely around the mat, but in each of the sections a depression in one section may be opposite a ridge in the next. And it is not necessary that the corrugations be parallel with the sides of the mat. They may run in any direction. The ridges and depressions in the intermediate borders might be made to form different angles with each other, or with those in the other sections, or the borders might be increased or diminished in number. It will of course be understood that the effect produced, and the manner in which the appearance varies, are modified more or less by these changes. Instead of making the corrugations in the center of the mat to bend four times, they may be made to change their line of direction any desired number of times, in a regular or irregular way; that is to say, instead of having four series of parallel depressions and ridges, a number of series, less or more, arranged at various angles with each other, may be employed. I may divide the mat by a number of imaginary lines representing a projection of any geometrical figure, and in each of the sections so formed make parallel corrugations or alternate ridges and elevations, the different sets of corrugations making with each other the proper angle to give the effects sought for. To give the moire effects, I usually make the ridges and depressions undulating, while maintaining the parallel position with relation to each other. I desire, therefore, to have it understood that I do not intend to limit the design to parallel corrugations which are straight throughout any considerable portion of their length, (as represented on the drawing, for example,) but that it includes the undulating ridges and depressions, or other disposition or formation in which the corrugations alter their direction irregularly, or in which they may be straight for a certain distance, and then formed in undulations, and that it includes the corrugations arranged in concentric circles, in spirals, in zigzags, or according to any desired figure."

The claims are as follows:

"(1) A design for a rubber mat, consisting of corrugations, depressions, or ridges in parallel lines, combined or arranged relatively, substantially as described, to produce variegated, kaleidoscopic, moire, stereoscopic, or similar effects, substantially as set forth.

"(2) A design for a rubber mat, consisting of a series of parallel corrugations, depressions, or ridges, the lines of the said corrugations being deflected at one or more points, substantially as set forth.

"(3) A design for a rubber mat, consisting of a series of parallel corrugations, depressions, or ridges arranged in sections, the general line of direction of the corrugations in one section making angles with, or being deflected to meet, those of the corrugations in the contiguous or other sections, substantially as described."

It is manifest that whoever drew this specification did not intend thereby to describe and claim a design for a rubber mat. He meant to cover any and every design, whatever its pattern, device, or variety of ornamentation, which presented to the eye the kaleidoscopic, moire, or stereoscopic effects which are produced by the juxtaposition of parallel corrugations on the surface of rubber when arranged in series or sections of parallels having differing directions. What he sought to patent was in substance not a design at all, but the product resulting from corrugating the surface of rubber, so that whatever designs might be formed from such corrugations should present the kaleidoscopic and other described effects. It may be doubted whether the alleged invention, as he understood it, was properly the subject of a design patent at all; but that question need not be decided. The circuit judge who sustained the demurrer held that "although there is an illustration in the drawing, and although each claim is for a design 'substantially as described,' the language of the specification is carefully expressed so as not to restrict the claims to the design shown in the drawing, but so that the first claim shall include every variety of design which can be produced by the arrangement of corrugations, depressions, or ridges in parallel lines;" and that "none of the claims can be limited to a design which produces any definite or concrete impression to the eye." 30 Fed. Rep. 786. The supreme court held that the circuit judge was right in holding that the first claim was altogether too broad to be sustained, and approved of the reasons given for that opinion. As to the other claims, however, that court held that they "may fairly be regarded as confining the patentee to the specific design exhibited in his patent and shown in the drawing." 11 Sup. Ct. Rep. 195. The decree sustaining the demurrer was therefore overruled, so that the question whether the single design thus shown was in fact new might be determined upon evidence as to the state of the art. The opinion of the supreme court closes with an intimation (obiter) that the peculiar kaleidoscopic effects produced by the impression of parallel lines forming a particular design on the surface of rubber "may constitute a quality of excellence which will give to the design a specific character and value, and distinguish it from other similar designs that have not such an effect." Id. The circuit court, "with some hesitation, reached the conclusion that under the intimation of the supreme court the patent [should] be sustained." 48 Fed. Rep. 558.

Subsequently to the decision of the supreme court the holder of the patent filed a disclaimer to the first claim, and to the words in the specification, "in concentric circles." The proof shows that the patentee was not the first to arrange parallel corrugations on the surface of rubber, grouped in sections and deflected so as to produce changes of light and shade as the position of the observer shifts relatively to the object, thus giving the kaleidoscopic effects described in the patent. An English patent to Fanshawe and Jacques, No. 2,935, of November 29, 1860, relates to rubber brushes with flexible rubbing surfaces in the shape of projecting ridges. These ridges are arranged in various designs, one (Fig. 3 on the drawing annexed to that patent, and herewith reproduced) being substantially of the same pattern as the central panel of the drawing in complainant's patent; another (Fig. 4) being of the same pattern as the central panel of defendant's

*Fig. 3.*

*Fig. 4.*

mat. Although undoubtedly intended to be attractive to the eye of the purchaser, the production of designs pleasing to the taste was not the immediate object sought to be attained by the maker of the bath brushes. Still, from the description in the patent, from an examination of the drawings of the brush surfaces, (there are several varieties of them shown in the English patent,) and from what is known as to the shifting of light and shade on the surface of a corrugated object viewed from different positions, it might be fairly inferred that in these bath brushes there would be found the "active power of producing a physical effect upon the rays of light so as to produce different shades and colors, according to the direction in which the various corrugated lines are viewed," which was referred to in the dictum of the supreme court as a feature of the patent in suit, which, perhaps, "presents a novel aspect." But this conclusion is not a mere matter of inference. Complainant put in evidence a bath brush of the design shown in Fig. 4, supra, reproduced in rubber, and proved by its expert that it was a correct representation of the thing shown in the English patent. The ridges or corrugations of the brush are thinner, higher, and more flexible than those of complainant's mat, and the

design is not the particular design shown in the drawing of the patent in suit; but when the brush and the central panel of complainant's mat are laid side by side, and looked at from different points of view, precisely the same variations of light and shade, of tone, tint, and color, sweep over their surfaces. In the face of that English patent, it was not open to the patentee of complainant's mat to claim broadly the production of kaleidoscopic and similar effects by such an arrangement of parallel corrugations on the surface of rubber,—to claim anything more than the mere design or pattern shown in his drawing. All that was open to him was such an arrangement of the corrugations as would produce a novel design, as the supreme court defines that word in its opinion in this case, viz.:

"A thing of distinct and fixed individuality of appearance—a representation, a picture, a delineation, a device—[which] addresses itself to the senses and taste, and produces pleasure or admiration in its contemplation." 11 Sup. Ct. Rep. 195.

The drawing of the patent, which represents a mat embodying the design, is as follows:

—And it is thus described in the specification:

"It is divided into a number of sections, a, b, c, d, the corrugations or depressions and ridges in those represented by the same letter being parallel. Thus, in the center and outer border formed by the sections a, b, the corrugations extend around the mat parallel with its outer edge and with each other. At the points where each depression crosses the diagonals drawn from corner to corner of the mat through the center it makes a right angle with its previous path. In, the intermediate borders the corrugations in the sections c are arranged at an angle with those in the sections d, and in both they form an angle with the corrugations in the sections a, b. By the different shading of the sections attempt has been made to represent the mosaic effects produced, which, it will be understood, vary like a kaleidoscope as the observer shifts his position."

It will be observed that the particular design thus shown and described is a combination of a central panel—such as is shown in Fig. 3 of the English patent—with a triple border, or, rather, a double border, for the two inner borders may be considered together as forming a single one of the well-known "herringbone" pattern. The record does not disclose any such combination in the prior art. The design thus shown as a whole is, so far as appears, new, producing a new effect.

The learned judge who decided the case at final hearing tersely expressed the rule by which the novelty of a design is to be tested:

"The question is not whether the prior art shows anything which looks like sections of the design, but whether it shows the design as a whole." 48 Fed. Rep. 558.

For "the specific design exhibited in [the] patent and shown in the drawing" the patent is therefore sustained. The design of defendant's mat is shown below:

The true test of infringement of a design patent is laid down by the supreme court in Gorham Co. v. White, 14 Wall. 528, as follows:

"If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

The differences in the borders of the two mats (the corrugations of one being arranged in four sections; of the other in two) are not substantial; but it hardly needs testimony to show (though evidence to that effect was given) that an ordinary observer, giving such attention as a purchaser usually gives, would not be likely to mistake the oblong mat with its double swallow-tailed center for the square mat with its center of four equal triangles, presenting the effect of a Maltese cross. The defendant's mat, therefore, is not an infringement of the "specific design exhibited in the patent and shown in the drawing." Complainant, however, contends that his patent covers not only the square mat shown in the drawing, but also an oblong mat such as the defendant's. The patent in referring to the drawing states that it "represents a mat embodying the design. A is the mat, which is, as represented, square, although it might be oblong or other desired shape." And it is insisted that the complainant should not be limited to a square mat just because he did not, by a drawing, illustrate the mat in its oblong as well as in its square

form. If the change of shape involved no change of design—if it were accomplished merely by a general enlargement or by a duplication of the details of the square mat, as it would be, for example, if the central portion of the patent were a checker-board device or a fragment of Greek border—this contention would be sound, because whoever was shown the square mat, and told to make it oblong, with the same design, would inevitably produce an oblong mat of a single specific pattern. But that is not this case Manifestly, in changing from the square to the oblong there must be a change of pattern in the central panel, a change which is not a mere duplication of the details of the original,—such, for instance, as would suffice to lengthen the border,—but a rearrangement of the principal lines of the figure, and such rearrangement is not necessarily confined to a single pattern. One way of rearranging the central panel is shown in defendant's mat. Other ways are indicated below:

 

When placed side by side, these three central panels (viz. the two last above shown and that of defendant's mat) present different designs, and we do not find in the evidence sufficient to warrant the finding that either of them is the one which would inevitably result from an effort to reproduce the square mat of the patent in an oblong shape. It seems impossible to determine from the directions of the patent what is the particular design which the patentee produced for an oblong mat. He has failed to give the description of his oblong mat in such "full, clear, concise, and exact terms as to enable any person skilled in the art to make the same." Such person would be as likely from the description in the patent to make the one variety of central panel as the other. The necessity of a clear and exact description of his oblong design was not apparent to the patentee, because he intended to claim any and every possible variety of design which, by means of parallel corrugations arranged in sections, produced kaleidoscopic and similar effects on the surface of rubber.

Such exact description was, however, essential to the validity of his patent, in view of the narrow field of invention which was really open to him, for the production of shifting light and shadows by means of corrugations on the surface of many different substances was old, and had in the prior art been applied to rubber. The patent contains no separate claim for the border, as in Dobson v. Carpet Co., 114 U. S. 439, 5 Sup. Ct. Rep. 945, and the defendant's combination of his central panel with the complainant's border cannot be held to be an infringement unless complainant first produced such combination, and exhibited it in his patent so clearly and fully that one skilled in the art would understand that it was that specific combination which the patentee claimed. As none of the defendant's mats infringe the only specific design exhibited in the patent and shown in the drawing, the decree of the circuit court should be reversed, with costs.