### APPLIED ARTS CORPORATION v. GRAND RAPIDS METALCRAFT CORPORATION.

No. 6275.

Circuit Court of Appeals, Sixth Circuit.

Nov. 7, 1933.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellant.

Wm. Cyrus Rice, of Grand Rapids, Mich. (Rice & Rice, of Grand Rapids, Mich., on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

From a decision holding it estopped to deny the validity of a design patent, and finding infringement, the defendant below appeals. The patent in suit is design patent No. 84,811, issued August 11, 1931, to R. De Boer. It is for an ornamental design for a combination ash receiver and electric lighter "substantially as shown" in two drawings, one of a front elevational view of the combination, and the other of its side elevational view. The main utilitarian purpose of the device is for installation in automobiles. There is disclosed a supporting back plate, a semi-cylindrical ash receptacle attached to its wide upper portion, and a forwardly projecting electric lighter mounted on the narrower lower portion, which has downwardly and inwardly curved sides, and a curved lower end.

The claim of estoppel is based upon the following facts: At the time application was made for the patent, the designer, Rudolph De Boer, was in the employ of the plaintiff, and assigned the application to his employer. Prior to issuance of the patent De Boer resigned, organized the defendant company, became the owner of three-fourths of its capital stock and its president. In view of these circumstances the court below held the defendant corporation subject to any estoppel which might exist against the patentee. Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co. (C. C. A.) 142 F. 157; Mellor v. Carroll (C. C.) 141 F. 992.

As to whether an estoppel existed as against De Boer, this court in Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 288 F. 330, examined the basis upon which the rule has been frequently put, and arrived at the conclusion that while the transfer of an existing grant of monopoly may create an estoppel by deed, forbidding the grantor to deny the validity of the grant, this theory is inapplicable to the transfer of the inchoate right suggested by a pending application. This was on the ground that the formulation of the grant was delayed for years after the inventor's connection with the matter ceased, and the patent was issued with broad claims which the inventor never made, and which he knew were not his invention. Whether this limitation upon the doctrine of estoppel is applicable to a case in which there was no delay and no enlargement of the claims of the application, and whether, in any event, applicable to a design patent wherein the single claim follows the stereotyped simple form, we need not, in view of the conclusion arrived at upon the question of infringement, here decide. It is to be noted that when the Supreme Court affirmed the decision in the Westinghouse Case, 266 U. S. 342, 45 S. Ct. 117, 121, 69 L. Ed. 316, it considered the distinction between the assignment of a patent and the assignment of a mere inchoate right to a patent, only as it bore upon the extent of the estoppel rather than upon the existence of the right itself.

For our present purpose the limitation put by the Supreme Court upon the extent of the estoppel asserted against the assignor in the Westinghouse Case is sufficiently clear to point the way to decision. Concluding, in spite of a number of decisions contra, that Judge Lurton for this court in Noonan v. Chester Park Athletic Company, 99 F. 90, announced the true rule in holding that the assignor of a granted patent is not prevented from denying infringement, and on that issue is permitted to show the state of the art involved so that the court may see what the thing was which was assigned, the court went on to say: "It is apparent that the scope of the right conveyed in such an assignment [of an application] is much less certainly defined than that of a granted patent, and the question of the extent of the estoppel against the assignor of such an inchoate right is more difficult to determine than in the case of a patent assigned after its granting. * * * We can well be clear, however, that if it is proper to limit the estoppel available for an assignee after patent as against his assignor by reference to the state of the art, a fortiori is such reference relevant where the estoppel is sought by the assignee before patent."

In the instant case the District Court found infringement in two designs put forth by the defendant. It had before it the prior art, but whether the precise invention, or in other words, the scope of the patent, was considered, is not clear; the court merely holding that the resemblance was such as to deceive the ordinary observer, and the similarity so substantial as to result in confusion to prospective purchasers, applying the language of Gorham Manufacturing Company v. White, 14 Wall. (81 U. S.) 511, 530, 20 L. Ed. 731.

It has been held, however, that a design patent stands on as high a plane as utility patents, Knapp v. Will & Baumer Co., 273 F. 380 (C. C. A. 2); Cahoone Barnet Mfg. Co. v. Rubber et al., 45 F. 582 (C. C. N. J.), and that on the issue of infringement a design patent is not infringed by anything which does not present the appearance which distinguishes the design claimed in the patent from the prior art. New York Belting & Packing Co. v. New Jersey Car-Spring & Rubber Co., 53 F. 810, 815 (C. C. A. 2); Byram v. Friedberger, 87 F. 559 (C. C. Pa.); Bevin Bros. Mfg. Co. v. Starr Bros. Bell Co., 114 F. 362 (C. C. Conn.); Kruttschnitt v. Simmons, 118 F. 851 (C. C. N. Y.). Thus is presented a difficulty. The Supreme Court has said (Gorham v. White, supra) that sameness of effect upon the eye is the main test of substantial identity of design, but it is not essential that the appearance should be the same to the eye of the expert. It is sufficient if it is the same to the ordinary observer. Yet it is clearly the rule that similitude of appearance is to be judged by the scope of the patent in relation to the prior art. The question at once presents itself: Are these tests of identity in conflict? What does the ordinary

observer, at least in the common acceptation of that phrase, know of the prior art? If the two tests are to be reconciled, some qualification must be recognized as applied to the ordinary observer. A careful analysis of Gorham v. White, and other adjudicated cases supplies the answer. The ordinary observer is not any observer, but one who, with less than the trained faculties of the expert, is "a purchaser of things of similar design," or "one interested in the subject." The mythical prudent man in negligence cases is not the Hottentot or Abyssinian who has never seen a locomotive or driven an automobile, but one who has average familiarity with such instrumentalities, and can form a reasonable judgment as to their speed and mode of operation. So is the average observer not one who has never seen an ash tray or a cigar lighter, but one who, though not an expert, has reasonable familiarity with such objects, and is capable of forming a reasonable judgment when confronted with a design therefor as to whether it presents to his eye distinctiveness from or similarity with those which have preceded it. This view is confirmed by the factual analysis which the Supreme Court gave to the evidence in the Gorham Case, laying its greatest stress upon the evidence of sameness there given by the large number of witnesses "familiar with designs, and most of them engaged in the trade."

So viewing the test that is to be applied on the issue of infringement, it appears to us that while there is some similarity between the patented and alleged infringing designs, which without consideration of the prior art might seem important, yet such similarity as is due to common external configuration is no greater, if as great, between the patented and challenged designs as between the former and the designs of the prior art. The article patent to Metzger, No. 1,543,290, issued June 23, 1925, and the first design patent of De Boer, No. 79,348, issued September 3, 1929, both disclose a backplate, the upper portion of which is comparatively wide and has attached thereto a receptacle for ashes, and the lower portion of which is narrowed by curving side edges to a circular downward extension accommodating a cylindrical forwardly extending lighter. There are differences of course in lines and curves between the outer configuration of the patented design and those noted in the prior art, but such differences are no greater than those that exist between the patented design and the alleged infringing designs. Conceding validity to the patent, it is quite clear it is entitled to a very limited interpretation, and that so limited the defendant's designs do not infringe. The ash tray of the patented design is semi-cylindrical, that of the defendant's first structure is semi-octagonal, and that of its second is a combination of three connected arcuate portions. The defendant's devices are ornamented with fluted or beveled designs not at all found in the drawings of the patent, and the narrowing of the backplate to accommodate the lighter is accomplished by downward and outward curves, rather than by the downward and inner curves of the patent. There are also other differences in detail not necessary to note. We are quite aware that similarity is not to be determined by making too close an analysis of detail, yet where in a crowded art the composite of differences presents a different impression to the eye of the average observer (as above defined), infringement will not be found.

Another consideration contributes to our conclusion that there is no infringement. The patented design is comparatively simple, and without ornamentation. In the main its configuration is made imperative by the elements which it combines and by the utilitarian purpose of the device. It was certainly not the intent of the law to grant monopoly to purely conventional design which is in itself little more than a necessary response to the purpose of the article designed. The scope of a design patent, as well as its originality, must depend on something more than this. As was said by this court in Standard Computing Scale Company v. Detroit Automatic Scale Co., 265 F. 281: "These designs are both for single column computing scales, and are of necessity similar in general construction, but materially different in appearance." To hold that general configuration made necessary by function must give to a patented design such breadth as to include everything of similar configuration, would be to subvert the purpose of the law, which is to promote the decorative arts [1] rather than to effectuate it. It is as though we were to say that since all dining room chairs are similar in that they have four legs, a seat and a back, the great master designers of the classical periods were merely slavish imitators of their predecessors, or to observe that because Grecian columns are all, in response to the purpose they serve, composed of base, shaft, and capitol, that they are therefore of the same design, and that there is no substantial difference between

[1] Rowe v. Blodgett & Clapp Company, 112 F. 61 (C. C. A. 2); Theberath v. Harness Trimming Co., 15 F. 246 (C. C. N. J.).

the Doric and the Corinthian, or between the Corinthian and the Ionic.

Some point is made of confusion on the part of purchasers between the defendant's devices and those of the plaintiff. The evidence on this subject is not impressive. We have seen the patented articles and those alleged to infringe, and as was said by Judge Donahue, in the Standard Computing Scale Company Case, supra, with Judges Knappen and Denison concurring: "Oral evidence is never so satisfactory as the judgment of the eye, upon actual view of the original design patent and the one claimed to be an infringement thereof." Compare, also, Whiting Manufacturing Company v. Alvin Silver Company, 283 F. 75 (C. C. A. 2), and Elite Manufacturing Company v. Ashland Manufacturing Company, 235 F. 893 (C. C. A. 6).

We conclude that granting the validity of the patent as the necessary consequence of a conceded claim of estoppel, but not deciding the issues as to either, the defendant's designs do not infringe.

The decree below is reversed, and the case remanded for further proceedings consistent herewith.