The TAPPAN COMPANY, a Corporation, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Corporation, Frigidaire Sales Corporation and Halle Bros. Co. (Inc.) a Corporation, Defendants.

Civ. A. No. 37217.

United States District Court
N. D. Ohio, E. D.

Dec. 6, 1965.

See also D.C., 245 F.Supp. 972.

Haight, Simmons & Hofeldt, Edward A. Haight and John Hofeldt, Chicago, Ill., and Oberlin, Maky & Donnelly, Cleveland, Ohio, for plaintiff.

Hibben, Noyes & Bicknell, George N. Hibben, Chicago, Ill., Teare, Fetzer & Teare, Cleveland, Ohio, Warren E. Finken, Dayton, Ohio, for defendants.

GREEN, District Judge.

This action came on for trial upon plaintiff's complaint alleging that defendants had engaged in acts of infringement of two design patents belonging to plaintiff, being Nos. Des. 174,240 (March 15, 1955) and Des. 180,069 (April 16, 1957), hereinafter referred to as '240 and '069. The patents in suit cover two different designs for cooking ranges.

Defendants General Motors Corporation and Frigidaire Sales Corporation are charged with infringement in the manufacture and sale of the alleged infringing ranges, while defendant Halle Bros. Co. was charged with contributory infringement in the retail sale of the said ranges. The alleged infringing ranges are sold by defendants under the trade name "Flair."

At the trial no evidence was offered by plaintiff regarding sales by Halle Bros.

Co., and at the conclusion of plaintiff's prima facie case a motion to dismiss as to defendant Halle Bros. Co. was granted.

As against defendants General Motors and Frigidaire the case was tried on the same evidence, and the Court will not refer to the defendants separately in the course of this memorandum.

Defendants have asserted several defenses to the claims of patent infringement made by the plaintiff. Defendants contend that both the '240 and '069 patents are invalid for the following reasons:

1) Lack of invention over the prior art.

2) The invention of the patents, if any, is functional rather than ornamental.

3) The designs of the patents were created by persons other than the named patentees.

4) Anticipatory public use.

5) Insufficiency of disclosure under 35 U.S.C. 112.

Defendants further contend that the accused ranges do not infringe the '240 and '069 patents, even if they be considered valid.

The ranges here in suit are variously referred to as "free-standing" or "high-oven" "eye-level" ranges. The basic configuration of such a range has the surface burner at about counter height with the oven portion of the range mounted above the surface burners, generally at about eye level. Ranges of this type may be set on a separate base cabinet or placed into existing kitchen counter-top space.

Both patents in suit disclose ranges with all controls situated above the eye-level oven. The accused ranges manufactured and sold by defendants also have the controls so situated, although the arrangement of the controls differs from that shown in the patents.

Ranges of the free-standing design are clearly distinguishable from conventional cooking ranges, which are of counter-height, floor-standing cabinet design, with the ovens below the surface burners, the surface burners being on the counter-top level of the range. The oven and surface burner controls on such a range are usually located either on the front of the range above the oven doors, or on the top of the range or on a panel behind the surface burners.

From the evidence it appears that the great bulk of ranges commercially produced and sold from the middle 1930's to the middle 1950's were of the conventional variety.

Plaintiff's '240 patent was issued on March 15, 1955 and the '069 patent was issued on April 16, 1957. Plaintiff's first public production and sale of ranges embodying the designs of either patent occurred in 1958, being the design of the '069 patent. Those ranges were designated by plaintiff as the Fabulous 400 line. Plaintiff never produced a commercial range of the design of the '240 patent.

Defendant introduced the alleged infringing ranges into the market in 1960. At the time defendants entered the market, plaintiff's Fabulous 400 range had met with great consumer acceptance, and plaintiff's share of the electric range market had substantially increased.

Prior to the time that both plaintiff and defendants placed their free-standing ranges on the market, ranges of the "built-in" type had become a substantial factor in the general range market. A built-in range is of a design suggested by its name—the oven is built into a wall at about eye level and the surface burners are situated on a counter top separate from and contiguous to the oven. Both plaintiff and defendants were influenced by consumer reaction to the built-in ranges in determining to develop a free-standing range. The free-standing range reflects the general relationship of burners and oven of the built-in range, but has the advantage of greater flexibility of use while not requiring physical alteration of the kitchen for installation.

After giving careful consideration to the entire record herein, the Court has concluded that this case can be resolved

on the issue of infringement of the patents in suit.

Both parties are in agreement that the basic test of infringement in a design patent action is represented by the Supreme Court decision in Gorham Manufacturing Co. v. White, 14 Wall. (81 U.S.) 511, 20 L.Ed. 731 (1871). That basic test is:

> * * * that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same—if the resemblance is such as to deceive such observer, inducing him to purchase one supposing it to be the other—the first one patented is infringed by the other.

The matter of prior art, however, is a significant factor in the field of design patents, as it is in mechanical patents, and must be taken into account in considering the question of infringement. Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 226 F.2d 207 (CA 6, 1955); Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 67 F.2d 428 (CA 6, 1933); Rowley v. Tresenberg, 37 F.Supp. 90 (D.C.E.D.N.Y., 1941), aff'd 123 F.2d 844 (CA 2, 1941); Deller's Walker on Patents, §§ 180, 181 and 182. It has been observed that the test of novelty of a design, the test of infringement of a patented design, and the test of anticipation of a patented design are all the same simple test—do the designs look alike to the eye of an ordinary observer? Phoenix Knitting Works v. Rich, 194 F. 708 (CC Ohio, 1911). To infringe a design patent the accused device must appropriate the novelty in the patented device which distinguishes the design claimed in the patent from the prior art. Sears, Roebuck & Co. v. Talge, 140 F.2d 395, 396 (CA8, 1944); Applied Arts Corp. v. Grand Rapids Metalcraft Corp., supra, 67 F.2d, at 429.

As this Court interprets the decisions and text authorities considered, including those cited above, a basic general rule evolves. While a "Chinese copy" is not essential to constitute infringement of a design patent, there is no infringement unless the accused device substantially incorporates those features which serve to distinguish the patented device from the prior art, in the eye of the ordinary observer.

The Court considers the statements of the Court of Appeals for this Circuit in Applied Arts Corp. v. Grand Rapids Metalcraft Corp., supra, to be highly relevant to this action. In the course of that opinion the Court spoke as follows:

> The Supreme Court has said (Gorham Manufacturing Co. v. White, supra) that sameness of effect upon the eye is the main test of substantial identity of design, but it is not essential that the appearance should be the same to the eye of the expert. It is sufficient if it is the same to the ordinary observer. Yet it is clearly the rule that similitude of appearance is to be judged by the scope of the patent in relation to the prior art. Are these tests of identity in conflict? What does the ordinary observer, at least in the common acceptation of that phrase, know of the prior art? If the two tests are to be reconciled, some qualification must be recognized as applied to the ordinary observer. A careful analysis of Gorham Manufacturing Co. v. White and other adjudicated cases supplies the answer. The ordinary observer is not any observer, but one who, with less than the trained faculties of the expert, is "a purchaser of things of similar design" or "one interested in the subject," * * * So is the average observer * * * one who, though not an expert, has reasonable familiarity with such objects, and is capable of forming a reasonable judgment when confronted with a design therefor as to whether it presents to his eye distinctiveness from or similarity with those which have preceded it. id., pp 429–430.

In order to determine whether or not there was an infringement, the Court must look to the state of the art prior to

the conception of the patents in suit. As the Court is of the opinion that the same basic prior art is relevant to both the '240 and '069 patents a general review of this subject is taken. Individual consideration will be given, however, to comparisons of the two patents and the alleged infringing ranges.

In Detwiler patent No. 1,064,298 (June 10, 1913) a "cooking apparatus" is shown with an oven divided into two chambers situated above a base "with a plurality of stove holes."

In the Smith design patent No. 47,438 (June 8, 1915) a stove is shown with the oven chamber mounted at about eye level and surface burners below, with a substantial space between.

Henoch patent No. 1,431,953 (October 17, 1922) covers an "apartment house range." In this patent the oven is situated above a sliding drawer containing surface burners. The drawer, when not in use, slides back into the cabinet containing the oven, presenting a generally rectangular outer configuration. This differs from the ranges shown in the Detwiler and Smith patents, wherein the surface burners were stationary and the oven partially projected over the surface burner level.

White patent No. 1,604,436 (October 26, 1926) also discloses a stove with an oven at a high level above stationary surface burners.

Ham patent No. 2,526,476 (October 17, 1950) discloses a range which incorporates a sliding drawer surface burner unit beneath the oven compartment.

There is also in evidence British patent No. 222,012 (September 25, 1924) which claims:

> A gas cooker in which the oven is supported above a hotplate and in which the taps are situated at the top of the oven, substantially as described.

Several other instances of prior art cited by defendants disclose the positioning of controls on the upper level of a high-oven range.

Defendants also introduced examples of prior art disclosing the use of glass doors on ovens.

Defendants introduced into evidence advertisements for the Standard Electric Range during the years 1927 and 1928. These illustrate ranges in sale and use during that period generally reflective of the disclosures of the Detwiler, Smith, White and British patents. The Standard ranges had high ovens above stationary surface burners, with the ovens presenting a projecting appearance over the surface burners.

In the Court's opinion the foregoing are the most pertinent of the prior art as cited by defendants. The Court has considered the other prior art citations relied upon by defendants, but is of the belief that their relevance is not sufficient to warrant detailed discussion thereof.

Based on the prior art as cited by the defendants, the Court finds that for many years prior to the alleged dates of conception of the patents in suit there were known to the art ranges of a general free-standing design, with the oven or ovens above and surface burners below. The Court further finds that these ranges were disclosed in two designs: One with the oven projecting over the surface burners, with an open space between, and the other of a generally rectangular configuration with the surface burners being in a slideable drawer, capable of being concealed in the general structure when not in use. The Court further finds that the positioning of controls on an eye-level oven was disclosed by the prior art, including the positioning of such controls in a horizontal line above the oven door.

Turning to the patents in suit and the alleged infringing ranges, the Court will first consider plaintiff's '069 patent. Plaintiff contends that this patent is infringed by the Frigidaire Flair ranges identified as Models RCDB–640 and RCIB–645. Model 645 is a deluxe version of model 640, the designs of each being essentially the same. Both models are 40-inch ranges designed for use for counter-top installation or with a sepa-

rate base cabinet, and for the purposes of this discussion both alleged infringing models will be referred to as the Flair 40-inch range.

Defendants' Flair 40-inch Range Produced as Exhibit in Court
(Burner Drawer in Closed Position)

Defendants' Flair 40-inch Range Produced as Exhibit in Court
(Burner Drawer in Open Position)

The '069 patent consists of four drawings, and after identification thereof states:

I claim:

The ornamental design for a cooking range, as shown and described.

It is therefore necessary to consider the disclosure of the drawings themselves to determine the claimed design.

## United States Patent Office

Des. 180,069
Patented Apr. 16, 1957

Fig.1

Fig.2

Fig.3

Fig.4

PATENT DRAWINGS OF '069 PATENT

In their general configuration the drawings disclose a free-standing range with two ovens projecting out over a lower surface. The lower surface is a movable drawer, at the rear portion of which are located the surface burners.

The range controls are in a horizontal line above the oven doors.

In the Court's opinion these general features of design are found in the prior art, and no invention resides therein. Consequently, any protection to which

plaintiff is entitled on the '069 patent must be found in the specific detail thereof. As a corollary to this proposition, in order for the Flair 40-inch range to infringe the '069 patent, the Flair range must substantially embody the detailed disclosures of the '069 patent, so as to deceive an ordinary observer.

In the '069 patent the two ovens project forward over the surface burner level, with the bottom surface of the oven on a slight diagonal to a back plate which is perpendicular to the surface burner level.

In defendant's Flair 40-inch range the ovens do not project forward, but rather run in a straight line to the surface burner level, thereby presenting an L-shaped appearance when viewed from the side. There is a dividing strip on this surface between the bottom of the oven door and the top of the surface burner level.

In the '069 patent the back plate separating the ovens from the burner surface is shown with a grooved surface, and constitutes approximately 5/22nds of the entire height of the range.

On the Flair 40-inch range the dividing strip is smooth and is of a substantially smaller proportionate ratio to the overall dimension of the range.

In the '069 patent the slanted underside of the oven surface is shown with an insert therein. As embodied in the Tappan Fabulous 400 this insert is a light to illuminate the surface units.

In the Flair 40-inch range the range light is contained in a triangular projection situated between the top of the oven doors and the control panel above.

In both the '069 patent and the Flair 40-inch range the ovens are of unequal size. In the '069 patent the larger oven is shown to be on the left side of the range, whereas in the Flair 40-inch range it is to the right.

In the '069 patent the oven door handles are shown mounted vertically along the outer metal edges of the oven doors, and adjacent to one another.

In the Flair 40-inch range the oven door handles are mounted horizontally in the glass oven doors, and are on the same plane.

In the '069 patent the control panel, situated above the ovens, is recessed in from the plane of the oven door, but without an intervening structure.

The control panel for the Flair 40-inch range is also situated above the ovens. On the Flair range the control panel is on the same plane as the oven doors, but there is interposed between the ovens and the controls the projecting light.

In the '069 patent the controls are shown in a symmetrical design, with identical configurations on each half of the range. In each corner of the panel is a small rectangular box, one of such boxes being illustrated as containing a clock.

The controls of the Flair 40-inch range are arranged in an unsymmetrical design. A model of the range exhibited in court had a large rectangular box across almost half the control panel.

The '069 patent discloses, and the Flair 40-inch range utilizes, surface burners in a movable drawer type unit. In both the patent and the Flair 40-inch range, when the burner drawer is pushed in the surface units are concealed and the top of the surface burner drawer is on the same plane as the end panels of the ranges.

In the '069 patent, when the burner drawer is pulled out for use it comes forward in a straight line, to remain on the same plane as the end panels. When revealed, the burners are shown to be in a straight line across the surface of the drawer.

In the Flair 40-inch range, when the drawer is pulled out an upper section goes back into the body of the range while a lower section comes forward. The result is that when the burners are pulled out for use a trough effect is seen in relation to the end panels. When revealed, the burners are not in a straight line, but are two burners in the center front of the surface of the drawer with two burners to the rear and outside thereof.

In the '069 patent the surface burner drawer is shown to have a forward section capable of being folded down.

In the Flair 40-inch range the burner drawer is solid and does not fold down.

The Flair range has a distinctive lace pattern or filigree design on the surface of the glass oven doors, whereas the glass oven doors shown on the '069 patent are plain and unadorned.

The Flair range is plainly marked with the name Frigidaire on the oven and burner control panel and also has the imprint of its trademark Flair on the oven door, the said marking being prominently and conspicuously displayed on the front of the accused ranges.

■ In the Court's opinion the foregoing distinctions inevitably lead to a conclusion of non-infringement of the '069 patent by the Flair 40-inch range. While each single distinguishing feature would itself be insufficient, the sum total thereof results in an appearance sufficiently different from the disclosures of the patent to fall beyond the reach thereof.

It is the Court's conclusion that, under the test of the "ordinary observer" as enunciated by the Sixth Circuit in Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 67 F.2d 428 (1933), previously quoted herein, such ordinary observer would note a marked distinction between the design of the '069 patent and the Flair 40-inch range.

Plaintiff's expert witness, in testifying as to his opinion of the reaction of the ordinary observer to the '069 patent and the Flair 40-inch range, stated that they were "identical in spirit." He specifically stated:

I think an average eye would pick up basic elements of high ovens, two of them side by side, with the controls above the oven, and with a counter below, counter surface below, that is sometimes a work surface and sometimes a cooking surface; that the entire unit is surrounded— or is held together by considerable bright metal and glass, so that it looks like it would harmonize with the cabinets and counters of an average kitchen.

The standard of comparison applied by this witness encompasses only the very broadest elements of design of the '069 patent and defendant's Flair 40-inch range. In the Court's opinion these broad elements are found in the prior art, and are to a great degree imperative in the construction of a free-standing range with eye-level ovens. The Court believes that the advancement over the prior art of both the '069 patent and Flair 40-inch range consists of modernization of form and line to meet the demands of present day consumer taste.

■ If the Court were to ascribe to the '069 design patent the range of equivalents applied by plaintiff's expert, plaintiff would virtually secure a monopoly on any free-standing double oven range, with a movable burner drawer, of any modern pleasing design. In this regard the teaching of the Sixth Circuit in Applied Arts Corp. v. Grand Rapids Metalcraft Corp., supra, is again pertinent:

Another consideration contributes to our conclusion that there is no infringement. The patented design is comparatively simple, and without ornamentation. In the main its configuration is made imperative by the elements which it combines and by the utilitarian purpose of the device. It was certainly not the intent of the law to grant monopoly to purely conventional design which is in itself little more than a necessary response to the purpose of the article designed.

This statement of the Sixth Circuit has been adopted by other courts, as in McQuillen v. A. R. Hyde & Sons Co., 35 F. Supp. 870 (D.C.Mass., 1940), wherein the rule was stated as:

In considering the scope of the patented design, in order to determine the question of infringement, the patented design may not be given such breadth as to include general configuration made necessary by function. id., p. 873.

See also, Illinois Watch Case Co. v. Hingeco Mfg. Co., 81 F.2d 41 (CA 1, 1936).

In the Court's opinion, the areas of similarity found by plaintiff's expert are essentially the result of the necessary

basic configuration of a modern free-standing double oven range with surface burners below.

It is the Court's conclusion that both the '069 patent and the Flair 40-inch range represent modern day adaptations of a general type of range disclosed by the prior art, and, granting for the purposes of this opinion a valid scope of the '069 patent, the accused ranges do not infringe the patent.

The '240 patent is alleged to be infringed by Frigidaire ranges identified as Models RCDB 630 and RCIB 635. Both are 30-inch single oven ranges designed for counter-top installation or use with a separate base cabinet and, as with the 40-inch ranges, one is a deluxe model of the other. For the purposes of this discussion both alleged infringing models will be referred to as the Flair 30-inch range.

Defendants' Flair 30-inch Range
Plaintiff's Exhibit 68–B which was considered by plaintiff's expert witness in making comparison with '240 patent.

From the record the Court finds that the design of the '240 patent evolved from a program plaintiff entered into with the Raytheon Corporation to develop a commercially marketable "radar range." The radar range operated utilizing electrical micro-waves for the heating energy source. This fact is significant in that in micro-wave cooking the oven door must be made of, or substantially contain, metal to restrict the micro-wave energy to the cooking chamber.

The '240 patent itself contains two drawings, and after identification thereof states:

The dominant features of our design reside in the portions shown in full lines, [being the range separate from a base].

We claim:

The ornamental design for a range, as shown and described.

It is therefore necessary to consider the disclosure of the drawings themselves.

# United States Patent Office

**Des. 174,240**

**Patented Mar. 15, 1955**

174,240

**RANGE**

 

PATENT DRAWINGS OF '240 PATENT

The patent drawings disclose a range with a large single oven above a sliding surface burner drawer. All range controls are shown above the oven, arranged in a symmetrical design. The control panel is recessed in from the plane of the oven door. Although it cannot be defi-nitely ascertained from the drawings, it would appear that the control panel is a separate unit placed on top of the oven area.

The range is shown with end panels at about the burner drawer level, so as to present a basic L-shaped design from a

side view. The burner drawer, in both its open and closed positions, is lower than the level of the end panels, so as to present a trough-like appearance at all times. The drawer pulls straight out to reveal two surface burners.

The oven door is pictured with a heavy outside framing, and the door is shown in the drawings as having small openings in its corners. Similar openings are shown in the sides of the control panel area. In this regard, the patent states:

> The openings are shown only on part of the upper front grill and on part of the sides of the top portions. It is to be understood that they cover the entire areas shown.

Based on the testimony in the record relating to the meaning of these openings shown in the drawings, and bearing in mind that this patent evolved from the experimental micro-wave cooking project, the Court finds that the drawings disclose a perforated metal oven door and perforations in the metal sides of the control panel area.

The design of the '240 patent, which was never incorporated by plaintiff in a production model range, is a much simpler design than that of the '069 patent and, in comparing the two patents, is less attractive to the eye. In the Court's opinion the '240 patent, assuming validity for the purposes of this discussion, represents a small advance over the prior art and is only entitled to a narrow range of equivalents.

The defendants' Flair 30-inch range also has a basic L-shaped side view. The surface burner drawer, however, in its closed position is level with the tops of the end panels, presenting a continuous line from end panel to end panel. The drawer operates in the same fashion as that of the 40-inch range, so that in its open position it does present a trough-like appearance in relation to the end panels. When opened it reveals four burners, two in front and two to the rear.

The control panel of the Flair 30-inch range is on the same plane as the oven door, but as with the Flair 40-inch range there is a light interposed between the top of the door and the control panel. The range controls themselves are arranged in an unsymmetrical pattern.

The oven door of the Flair 30-inch range is glass, with a patterned design, and the metal framing is relatively narrow.

In appraising the relationship of the Flair 30-inch range and the '240 patent plaintiff's expert, on direct examination, testified:

> I believe they are the same in general aesthetic character, and would so impress the average person.

On cross-examination he stated that the impression the average observer would carry away from seeing both the '240 patent and the Flair 30-inch range would be of:

> * * * a range with an oven at more or less eye level, a cooking surface below it, which is also a work surface, and controls above the oven.

These elements of similarity are basically the essentials of construction of any single oven free-standing range with surface burners in a slideable drawer. This basic configuration derives from the prior art, and is not the invention, if any, of the '240 patent.

The Court has the general impression from the '240 patent of a rather gross structure of heavy line with a perforated metal door. On the other hand, the Flair 30-inch range presents a far more pleasing appearance of delicate line and clean modern design.

It is the Court's conclusion that both the '240 patent and the Flair 30-inch range are derivations from the prior art, and, under the controlling law previously cited herein, the Flair 30-inch range does not infringe the '240 patent.

At the trial much emphasis was placed by plaintiff upon the success of its Fabulous 400 range, and the fact that defendants acquired and considered the Tappan range during the development of the Flair range designs.

These considerations cannot affect the '240 patent, in that the Fabulous 400 line of plaintiff was based on the '069 patent.

As to the success of the Fabulous 400 range, there is no doubt that it did excite favorable consumer reaction. The testimony in this action indicated, however, that prior to the introduction of the Fabulous 400 the built-in range was making substantial inroads into the range market. The free-standing range, as previously indicated, is closely akin to the built-in range. There is no way of telling to what extent the built-in range "presold" the market for the free-standing range. Further, at the time of its introduction the Fabulous 400 was the only free-standing range available in the market, and the plaintiff was therefore free from the effect of a similar competitive product upon its sales for a substantial period of time.

Defendants pointed out that plaintiff engaged in a massive advertising campaign in conjunction with introduction of the Fabulous 400 range.

■ It is the Court's opinion that under the circumstances of this case the commercial success of the Tappan Fabulous 400 range cannot be relied upon to extend the scope of the '069 patent beyond the actual distinguishing features thereof over the prior art.

As to defendants' use of the Tappan range in the development of the Flair ranges, it was admitted that a Tappan Fabulous 400 range was acquired and studied as a part of the program. Plaintiff strenuously argues that this supports an inference of copying of the '069 patent.

■ Defendants' evidence was that for many years prior to 1959 General Motors had been interested in the development of a free-standing range and had engaged in experimental programs relative thereto. It was stated by defendants that in all development programs competing products are acquired and studied as a regular business practice. The Court finds nothing devious in this procedure. The evidence reflects that before the Flair ranges reached the open market a Kenmore free-standing range was put on the market, and that defendants acquired a model of that range also for study.

The evidence further indicated that many designs were considered, tested and modified by defendants before the commercial model was approved. Certain structural changes therein, which could be considered design, were dictated by functional considerations.

The Court is of the opinion that the introduction of the Tappan Fabulous 400 range may have spurred on defendants' development program for a free-standing range. However, on the entire record, the Court finds that in the eye of the ordinary observer, giving such attention as a purchaser usually gives, the design of defendants' ranges as compared to the design of plaintiff's patents, are not substantially the same so as to deceive such observer.

It is therefore the finding of this Court that defendants' accused ranges do not infringe plaintiff's '240 and '069 patents.

Having found for defendants on the issue of infringement, the Court does not consider it necessary to pass upon the issues of validity of the patents raised under the pleadings herein.

This Memorandum is adopted as Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedure.