## ILLINOIS WATCH CASE CO. et al. v. HINGECO MFG. CO., Inc., et al.

### No. 3037.

Circuit Court of Appeals, First Circuit.
Jan. 7, 1936.

Samuel W. Banning, of Chicago, Ill. (Ephraim Banning, of Chicago, Ill., Harry Lea Dodson, of New York City, and Thomas A. Jenckes, of Providence, R. I., on the brief), for appellants.

George B. Rawlings, of Boston, Mass. (Herbert B. Barlow, of Providence, R. I., and William F. Hall, of Washington, D. C., on the brief), for appellees.

Before MORTON, Circuit Judge, and MORRIS and McLELLAN, District Judges.

MORRIS, District Judge.

This is a suit charging infringement of Ridges design patent, No. 90,142, dated June 13, 1933, for a vanity case, owned by the Illinois Watch Case Company, one of the plaintiffs, appellants. The Elgin American Company, the remaining plaintiff, appellant, is the exclusive licensee under said patent.

The defendants are the Hingeco Manufacturing Company, Inc., and Fritz R. Johnson and Christopher L. Migliaccio, individually and as copartners doing business under the name and style of Cara Mia Distributors, of Providence, R. I.

The original bill of complaint was filed July 24, 1934, charging infringement and sale of vanity cases or compacts of a form and style which for convenience may be referred to as defendants' first style.

On August 15, 1934, a consent decree against the defendants, jointly and severally, was entered and a writ of injunction was issued in accordance with

said decree enjoining the defendants from manufacturing or selling the vanities or compacts above referred to as their first style. The injunction was modified by agreement of the parties the latter part of July, 1924, to permit the defendants to dispose of their stock of vanities then on hand and in process of manufacture upon the payment of a royalty of 10 cents per vanity.

At about the same time the defendants submitted for approval a modification of their first design and requested plaintiffs' consent to the manufacture and sale of said modified form, which consent was refused. This modified design will, for convenience, be termed the defendants' second style.

The plaintiffs' design, marked "Plaintiffs' Patent" and the defendants' two styles of vanities, one marked "enjoined form" and the other "present form," are herein illustrated.

PLAINTIFF'S
PATENT

DEFENDANT'S
ENJOINED FORM

DEFENDANT'S
PRESENT FORM

In the meantime a dispute arose between the parties regarding the number of the first style vanities which the defendants had disposed of under the agreement which ultimately resulted in a motion to commit the defendants for con-

tempt. Upon hearing, this motion was denied. Thereupon, under leave of the court, plaintiffs filed a supplemental bill charging infringement and unfair competition in the manufacture and sale by the defendants of their second style of vanities. The case was heard upon its merits resulting in a decree dismissing the bill both as to charges for patent infringement and charges of unfair competition.

The defendants in their answer denied infringement, and moved to strike from the supplemental bill the allegations relating to unfair competition on the grounds that it did not allege diversity of citizenship and failed to include an allegation that the value in dispute exceeded $3,000. These omissions in the pleadings were cured at the trial by amendment. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, which holds that, even in the absence of jurisdictional averments and proofs regarding values, the federal court has jurisdiction to grant relief against acts of unfair competition in a suit involving infringement of a patent where the same acts are charged to constitute both infringement and unfair competition.

In view of the consent decree, the patentability of plaintiffs' design is not in issue. The only question is whether the defendants' second design infringes plaintiffs' design.

Plaintiffs' design is known to the trade as the "Tulip" patent, and it is claimed that none of the prior designs (patented or unpatented) submitted by the defendants bear any close resemblance or produce any impression on the eye or register in the mind an impression at all similar to that created by plaintiffs' Tulip compact. Plaintiffs' further contention is that defendants' design, which is an "Acorn" design, is a mere variation of defendants' first design which was enjoined under the consent decree.

The errors relied on by the appellants are (1) the finding that the patent in suit was not infringed; (2) the finding that the defendants' compact was not a colorable imitation thereof; (3) in not adopting the proposed findings of fact and conclusions of law submitted by the plaintiffs, and in adopting the findings of facts and conclusions of law submitted by the defendants.

Taking these assignments of error in their reverse order, the findings of fact

submitted by the plaintiffs and not specifically found by the court are that the design of the plaintiffs' patent was new, beautiful, unique, and distinctive in appearance; that the compact had outstanding commercial value; that its sale far exceeded the sales of any previous compacts produced by the plaintiffs; that the public recognized the design as having its origin with the plaintiffs' company; that they are known as the "Elgin Tulip" design; that the manufacturers have acquired a standing and reputation in the trade, and that there is a public demand for its goods; that the public in asking for Elgin Tulip compacts expects to get compacts manufactured by the Elgin American Company; that customers and the trade have been confused; that the trade is unable to distinguish defendants' compacts without close examination; that the defendants' compacts are of inferior workmanship; and that dealers have commingled defendants' and plaintiffs' compacts in such a way as to confuse buyers into the belief that all the compacts on display are the product of the Elgin American Company.

The trial judge made such findings of fact as he deemed essential for a final determination of the case. He found that no testimony was adduced on behalf of the defendants tending to show that compacts exactly similar in form and appearance had been on the market prior to the introduction of plaintiffs' compacts manufactured in accordance with the design patent in suit; that the design patent shows certain characteristic decorations which are inherent in the "Tulip" design, but which are inherently different in defendants' "Acorn" design; that the evidence warrants the conclusion that both the plaintiffs and the defendants have been engaged in the manufacture of vanity cases of various designs for many years and have acquired a good standing and reputation with the trade; that the plaintiffs' "Tulip" design was put on the market early in 1933, and that the defendants' "Acorn" design was first put on the market in August, 1934, and that both have met with considerable commercial success; that defendants made an honest effort to so alter the design of their first lobular case as to make it readily distinguishable in the design from the design shown and claimed by the patent in suit; that there was evidence of a few instances of confusion as to the origin and manufacture of various vanity cases, including the "Tulip" and "Acorn" designs, and that vanity cases of all kinds including those involved herein have been mistakenly returned for repair to both plaintiffs and defendants; that substantially 95 per cent. of the entire output of defendants' "Acorn" vanity cases is sold to jobbers or wholesalers who resell to the retail trade, and that substantially the entire output of plaintiffs' "Tulip" vanity cases is sold direct to department stores and other retail trade.

While it is true that, on an appeal in equity, the Circuit Court of Appeals is not bound by the trial judges' finding of fact, it is equally true that the appellate court ought not to disturb such findings unless it clearly appears that the trial judge has misapprehended the evidence or found facts clearly against the weight thereof. American Rotary Valve Co. v. Moorehead (C.C.A.) 226 F. 202; Wolf Mineral Process Corp. v. Minerals Separation North American Corp. (C.C.A.) 18 F.(2d) 483, 486; D. T. M'Keithan Lumber Co. v. Fidelity Trust Co. (C.C.A.) 223 F. 773; Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356.

Plaintiffs' evidence consisted of a great many depositions taken in different cities of the country which were not attended by the defendants or their counsel, and in consequence the witnesses were not cross-examined. Upon this point, however, the defendants have no cause to complain, as they were given notice that the depositions would be taken, but it does appear from the reading of such depositions that many statements of witnesses are mere hearsay or conclusions which would have little weight, if any, with a trial judge. Many of the deponents were customers of the plaintiff company, and the only judgment the trial judge could form as to their mental attitude was what could be gathered from the depositions. See Moebius v. Louis Dejonge & Co. (D.C.) 215 F. 443, 447. We cannot say that the trial judge found any facts contrary to the clear weight of the evidence or that he omitted to find facts essential to a determination of the case. The outline and ornamentation of both designs in controversy were before the court, and he was at liberty to use his own eyes and his own common sense in comparing the two designs.

The conclusions of law which the plaintiffs submitted and the court declined to adopt are that a design, to be patentable, must be novel, beautiful, and appealing to the eye, and must cause a buying demand for the goods embodying the design; that there is no surer test of patentable invention than the reception by the trade; that the best test of infringement is similarity in appearance to the eye of an ordinary observer; that mere slight changes in configuration which do not change the general effect are insufficient to avoid infringement; that the law forbids colorable imitations as well as exact copying; that it is unfair competition to simulate nonfunctional features of an article of merchandise which have acquired a secondary meaning; that the defendants have been guilty of unfair competition in simulating the form, dress, finish, and coloration of plaintiffs' "Elgin Tulip" compact; and, finally, that the defendants have been guilty of infringement of plaintiffs' design patent.

The trial judge failed to state any of these conclusions of law in the language requested, but he did hold design patent No. 90,142 to be valid for the purposes of this case on the supplemental bill by virtue of the prior consent decree that was entered and the resulting estoppel on defendants to deny the validity of said patent in this supplemental action; that oral evidence showing instances of confusion on the part of purchasers between two different designs is not controlling if an examination of the respective designs show a sufficient dissimilarity so that there is no justification for the conclusion; that defendants' "Acorn" vanity cases are not an infringement of plaintiffs' patent and they were not made or sold in unfair competition.

█ It was not necessary for the trial judge to determine that a design, to be patentable, must be novel, beautiful, and appealing, and must cause a buying demand for the goods embodying the design. The test of patentability of plaintiffs' design is not in issue under plaintiffs' supplemental bill.

Turning now to the question of whether plaintiffs' "Tulip" design is infringed by defendants' "Acorn" design, the courts have for many years turned to the opinion of Mr. Justice Strong in the case of Gorham Manufacturing Company v. White, 14 Wall. 511, 20 L.Ed. 731, as a leading authority on the question of infringement of design patents. It is there held that it is the appearance to the eye that constitutes mainly the contribution to the public which the law deems worthy of recompense, and the identity of appearance or sameness of effect upon the eye is the main test of substantial identity of design. It is not essential to identity of design that the appearance should be the same to the eye of an expert. If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, or if the resemblance is such as to deceive an ordinary observer and sufficient to induce him to purchase one supposing it to be the other, the one first patented is infringed by the other.

In the instant case, the contents of the compact, its arrangement, and functions are not in issue.

The plaintiffs object to the view of the law as expressed by the trial court, wherein he said: "The law is pretty reluctant to permit, under the guise of the protection of a patent or patent rights, a party to appropriate a color or to appropriate a shape, which has not been wholly the creation of artificial designing. Particularly is the law reluctant to permit the appropriation of shapes which are found in nature, and I think that this is the situation here."

In the main we agree with the foregoing statement. We do not go so far as to hold that forms taken from nature may not be so adapted as to produce a patentable article. Inflexible Co. v. Megibow (D.C.) 251 F. 924. But see Miller Rubber Co. v. Behrend et al. (C.C.A.) 242 F. 515; Denton v. Fulda (C.C.A.) 225 F. 537, 538.

In the last-mentioned case, Judge Coxe of the Second Circuit Court of Appeals said: "We are inclined to the opinion that the designed patent cannot be sustained for the reason that the claim covers broadly a design for locket or pendant of a butterfly with upfolded wings. There is nothing novel about a butterfly with folded wings, or wings in any other condition or position. It does not involve invention, therefore, to paste a drawing or painting of the natural wings of such an insect upon a pendant. To hold otherwise will permit those who select a different design for a pendant, such, for

instance, as a shell, a flower, or a bird, to obtain a patent in each instance. Nothing patentably novel is produced by placing such objects in new environments."

Originality and the exercise of the inventive faculties are as essential to give validity to a patent for a design as for a mechanical invention. General Gaslight Co. v. Matchless Mfg. Co. (C.C.) 129 F. 137; Goudy v. Hansen (C.C.A.) 247 F. 782; Tubular Rivet & Stud Co. v. Standard Finding Co., Inc. (C.C.A.) 231 F. 170; Cahoone Barnet Mfg. Co. v. Rubber & Celluloid Harness Co. (C.C.) 45 F. 582; American Type Founders' Co. v. Damon & Peets (C.C.) 140 F. 715.

The only ornamentation on plaintiffs' design, aside from coloring, is the rim, which is given a broken or interrupted contour along its inner margin forming inward barbs suggestive of the points of a tulip leaf from which it takes its name.

The defendants' compact is divided into two distinct parts or sections, by a narrow curved band or rib, extending transversely across the surface. The upper surface which is defined by this band and curved edge strips forming a continuation thereof is intended to simulate the cup of an acorn. The lower section is intended to represent the shell of an acorn. This section of the defendants' compact projects from the transverse band a distance within the side walls of the hood, then swells outwardly, and then curves inwardly and merges into a curved portion constituting the lower part of the section. The inner line of the border or rib defining the top of the hood or cup section is scalloped. While the general contour of the defendants' compact is lobular in form and in this respect similar to plaintiffs' compact, attention must be given to the ornamentation. There is a total absence from the defendants' compact of the reversely arranged barbs constituting essential features of the plaintiffs' design or any equivalent thereof. There is a total absence from plaintiffs' compact of any transverse lines across the face of the compact separating a cup section from a lower shell section.

Functionally, both plaintiffs' and defendants' compacts are sufficiently small to be readily held in the hand and to occupy but a limited space in a woman's handbag. Both articles are relatively thin, but these are essential characteristics of most compacts, whether round, square, or lobular. But no one could have a monopoly on these features. Defendants, who have manufactured compacts for many years, even prior to plaintiffs' manufacture, use all of the standard available colors for the surface areas of their vanity cases or compacts but no one can have a monopoly of colors.

In the case of Applied Arts Corp. v. Grand Rapids Metalcraft Corp. (C.C.A.) 67 F.(2d) 428, 430, Judge Simons says: "To hold that general configuration made necessary by function must give to a patented design such breadth as to include everything of similar configuration, would be to subvert the purpose of the law, which is to promote the decorative arts rather than to effectuate it."

The test of infringement of a design is whether the two designs have substantially the same effect on the eye of the ordinary observer giving such attention to the matter as purchasers usually give. The average woman in selecting a compact is quite critical as to their outward appearance. Applying the above test, we agree with the District Court that defendants' "Acorn" design of a compact does not infringe plaintiffs' "Tulip" design. Moreover, all of plaintiffs' compacts contain a powder pad plainly marked "Elgin," while the defendants' compacts do not contain the name of the manufacturer, but the individual boxes in which they are inclosed are marked "Cara Mia."

The only remaining issue is that of unfair competition. The essence of unfair competition is fraud, which is a question of fact, and it is sufficient to make out a case to show that the natural and probable result of defendants' conduct is to deceive ordinary purchasers buying under ordinary conditions into believing that they are purchasing the goods of one manufacturer for those of another. Miller Rubber Co. v. Behrend (C.C.A.) 242 F. 515; Handel Co. v. Jefferson Glass Co. (D.C.) 265 F. 286; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972.

We agree with the trial judge in holding that "On all the evidence in the case there is nothing sharp or fraudulent in defendants' methods of competition and no unfair acts of competition on the part of the defendants with plain-

tiffs, and defendants have violated no lawful rights of the plaintiffs."

The order of the District Court dismissing plaintiffs' bill is affirmed, with costs to the appellees.