McKAY CO. v. LOGAN CO.

No. 919.

District Court, W. D. Kentucky.

July 16, 1936.

Arthur F. Robert, of Louisville, Ky., and Archworth Martin, of Pittsburgh, Pa., for plaintiff.

Robert F. Vaughan, of Louisville, Ky.. and Ralph G. Lockwood, of Indianapolis, Ind., for defendant.

HAMILTON, District Judge.

This is a suit against the Logan Company for the alleged infringement of structural patent No. 1,959,032, issued May 15, 1934, by the United States Patent Office to William R. McGowen, assignor to plaintiff, the McKay Company, and of design patent No. 91,997, issued April 14, 1934, to Percival Goodman, assignor to the McKay Company.

After notice to the defendant of its alleged infringement, the bill of complaint was filed March 4, 1935.

The plaintiff is a Pennsylvania corporation, and is the owner of the patents in suit, and engaged in the business of manufacturing and selling metal furniture, including gliders.

The defendant is a Kentucky corporation, engaged in the business of manufacturing and selling metal furniture, including gliders. The principal defense is the invalidity of both patents; and the secondary one, that each of them, in view of the prior state of the art, is so narrowly and strictly construed as to not constitute infringement by the structure and design of the defendant's glider.

The claim of patentability of No. 1,959,-032 is that it is a contribution to the glider art, as follows:

(a) Smoother movement of swings or gliders heretofore in use.

(b) Reduction of friction, eliminating squeaks.

(c) Reduced side sway.

The swing is mounted upon a stationary support composed of end frames, each with a base bar, with uprights or posts. The base bars are connected by a tie bar secured in place at its ends by bolts, this bar being curled into eyes at its ends, through which bolts are extended. The bolts are extended through the lower end of a brace bar, or pair of brace bars of V shape, and such bars serve as trusses.

The upper ends of the brace bars are bolted or riveted to the legs, and a top rail is also bolted to the upper ends of the posts. The middle of each rail is depressed to its end portions, which are downturned.

The seat frame is suspended from the stationary rails by means of spring steel strips, or other flexible bars, at each corner of the structure. The seat structure consists of a pair of arm rails curled at the upper ends to form eyes for the reception of a crossbar, the ends of which are detachably secured to the upper ends of the arm rails in a suitable manner.

The forward ends of the side arms are bent downwardly and bolted to the front legs; the upper ends of said legs being curled to form eyes for the reception of a detachable connected crossbar. A canvas or similar strip has its ends looped around the crossbars and fastened in place, and seat cushion placed on the seating strip. Rear legs have their upper ends connected to the horizontal portions of the arm bars and braced with respect to the front legs by means of tie rods.

The legs are bent laterally at lower ends, and rigidly secured to the lower ends of the hanger straps; the upper ends of said straps being similarly rigidly secured to the ends of the bars.

The patent was allowed with four claims:

(1) Swing structure comprising stationary end frames, a seat disposed in a generally horizontal plane approximately midway between the upper and lower edges of said frames, a member carried by each corner of the seat and extending downwardly to a point adjacent to, but above, the bottom portions of the end frames, and vertically extending straplike hangers each having its lower end rigidly connected to the lower end of one of said members and its upper end rigidly connected to a top portion of the end frames; the hangers being of flat spring material and disposed in planes approximately parallel to the front of the seat.

(2) Swing structure comprising stationary end frames, a seat disposed in a generally horizontal plane approximately midway between the upper and lower edges of said frames, a leg member carried by each corner of the seat and extending downwardly to a point adjacent to, but above, the bottom portions of the end frames, and vertically extending straplike hangers each having its lower end rigidly connected to a leg member and its upper end rigidly connected to a top portion of the end frames; the hangers being of flat spring material and disposed in planes approximately parallel to the front of the

seat, and the lower ends of the legs being laterally turned at their points of connection to the hangers, so that each pair of front and rear hangers will be disposed in the plane of its associated end frame.

(3) Swing structure comprising stationary end frames, a seat disposed between the frames and having an arm rest at each end thereof, a member at each corner of the seat and extending downwardly a distance not substantially less than the distance between the seat and the arm rest, and vertically extending straplike hangers of spring material, each rigidly connected at its lower end to one of said members, and at its upper end rigidly connected to an end frame at a point not materially lower than the adjacent arm rest.

(4) Swing structure comprising stationary end frames, a seat disposed in a generally horizontal plane, and having members extending downwardly to points adjacent to, but above, the bottom portions of the end frames, and vertically extending straplike hangers of spring material each having its lower end rigidly connected to the lower end of one of said members, and its upper end rigidly connected to an end frame at a point which is substantially higher than the plane of the seat.

Patent No. 91,997 is claimed to be an original and ornamental design for a glider, with three dominant features, not theretofore embodied in any glider; flat spring strap suspension in lieu of chains, arm rolls at ends of approximately 180 degrees, and decorative metal strips.

Some time after April 14, 1934, defendant, the Logan Company, manufactured and placed on the market the glider which it is claimed infringed both the patents of the plaintiff. The defendant's glider is a spring suspension type with rigid end frames, with seats disposed in a generally horizontal plane, with metal strap hangers, rigidly connected by screws to the cross member of the frame. It is connected with the seat frame by being attached to the cross member thereof at its top at each end. In the defendant's glider there is no bolted connection between the feet and the body of the seat frame. On the four feet of the body of the glider are rubber thumb stalls, and there is attached to the bottom of the frame metal clips about 2 inches high. The feet of the glider fit closely into these clips, which leaves but little play. The rubber thumb stalls elim-

inate squeaking. The body of the glider, together with the seat frame, may be removed from the outer frame without taking out any screws or bolts. To this extent the defendant's glider is different in structure from that of the plaintiff, but performs substantially the same functions in the same way. The strap hangers are fastened in the same manner as those of the plaintiff, are of about the same width, and perform the same function. There is slightly less rigidity in the defendant's frame and glider attachment, which causes a little more side sway than in the plaintiff's. The arm roll on defendant's glider extends into the center of a cylinder roll about 2 inches in diameter. The curve in the plaintiff's arm roll extends below the top of the frame and has no terminus in a cylinder. The defendant's design has two metal strips secured by screws without head covering; the plaintiff's has four metal strips, two secured by bolts with smooth head covering.

Plaintiff's end frame has a horizontal foot piece extending the full width of the frame, rigidly attached by bolts at each end, with two wide centrally disposed standards extending upwardly therefrom at each end. Defendant's end frame has outer legs extending downwardly with spread feet, and no horizontal foot extending the full width of the frame, and has no centrally disposed upstanding standards, but connects the strap hangers at the bottom by heavy metal straps which make the bottom of the glider seat frame. The base strips are connected by a tie bar secured in place at each end by bolts.

Defendant contends: (1) That patent No. 1,959,032 is invalid in all particulars because of the lack of novelty of improvements over the prior state of the art; that it does not arise to the dignity of an invention, but involves only ordinary mechanical skill. (2) If valid over the prior state of the art, the invention must be limited to the particular structure disclosed in the patent, and the defendant has not infringed because its glider, unlike the plaintiff's, has no rigid connection between the frame and swing.

The plaintiff undertakes to support its structural patent solely on the ground that the prior art does not disclose gliders having vertically extending seat, suspending straps of spring metal rigidly connected at upper and lower ends to the stationary end frames and the seat frame; so the sole question is what effect the spring straps have on the patentability of the device and their rigid connection with the outer frame.

The file wrapper discloses that plaintiff's assignor's claim was first rejected by the Patent Office because of the state of the prior art, as illustrated in Morse or Brewer, No. 824,133 and No. 430,616, issued June 26, 1906, and June 24, 1890, respectively, and of Sisbower, No. 1,401,286, issued December 27, 1921; also of Birch, No. 9779, issued April 26, 1906, and of Kline, No. 347,428, issued August 17, 1886; and of Eaton, No. 1,173,654, issued February 29, 1916. As heretofore stated, subsequently the plaintiff's assignor's claim was allowed by the Patent Office, which is prima facie evidence of patentability. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 445, 31 S.Ct. 444, 55 L.Ed. 527. The prior art as disclosed by records in the Patent Office shows that on June 24, 1890, patent No. 430,616 was issued to Brewer for a child's cradle, and on June 26, 1906, patent No. 824,133 was issued to Samuel L. Morse for a cradle. Each of these embodied in its use spring strap hangers. The record is silent as to what practical use was in fact made of either the Brewer or Morse structure. The suspension strap used in the Morse patent rolled at the end with screws therein fastening the curved end to the frame.

The suspension strap used in the Brewer patent was fastened into vertical kerfs or notches at both the upper and lower ends. These straps were the arms of the swinging motion on the cradles, just as they are the arms in the swinging motion in the glider of the plaintiff. The arc of the swinging motion is more extended in plaintiff's appliance than in the Brewer and Morse patents. The straps are more firmly secured, and side sway is eliminated.

The swinging appliances on the cradle patents could not be used on plaintiff's glider without lengthening and changing fastening, and, because of their curved ends with screw hole perforations therein, would not carry great weight and would have limited life. The plaintiff's strap fastenings obviate these weaknesses.

The object of the Couch patent, No. 1,862,953, issued June 14, 1932, was to produce improved and efficient suspension elements and connections permitting free swinging movement of the seat and to prevent undue side sway. This glider had a

swinging seat in a supporting frame, with uprights of horizontal rails, with brackets rigidly connected to the seat portion, also with rigid T-shaped suspension elements with vertical arms, pivotally connected with the uprights and rails which lessened side sway. The Couch patent used a movable link instead of a rigid strap as appears in the plaintiff's patent.

The St. Charles Net & Hammock Company catalogued and sold gliders before the patent in suit was issued, having many features of McGowen's glider.

There is no contention on the part of the plaintiff in this case that its assignor made any discovery in the art in his patent. It is admitted that he only effected an improvement; that he substantially advanced the comfort, use, and convenience of the glider; and his appliance, when manufactured and placed on the market, materially increased the marketability and salability of gliders.

The defendant's glider is substantially the same as plaintiff's, in that it works in substantially the same way, performs substantially the same functions, and obtains substantially the same results with substantially the same appliances. They are identical in the sense of the patent law. Cantrell v. Wallick, 117 U.S. 689, 696, 6 S.Ct. 970, 29 L.Ed. 1017. On the question of infringement, a comparison of the glider of the plaintiff's with that of the defendant clearly shows that the defendant has substantially adopted that of the plaintiff. In the case of Union Paper Bag Machine Company v. Murphy, 97 U.S. 120, 125, 126, 24 L.Ed. 935, the Supreme Court said: "Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

■ It remains to inquire whether prior use and want of novelty has been shown. The burden of proof is upon the defendant to establish this defense. The grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. Smith v. Goodyear Dental Vulcanite Company, 93 U. S. 486, 23 L.Ed. 952; Lehnbeuter v. Holthaus, 105 U.S. 94, 26 L.Ed. 939. Not only is the burden of proof to make good this defense upon the party setting it up, but it has been said by the Supreme Court that every reasonable doubt should be resolved against him. Coffin v. Ogden, 18 Wall. 120, 21 L.Ed. 821.

The difference between plaintiff's glider and similar devices previously in use is not radical, but though the change may have been simple "it attained an end not attained by the prior art."

■ Previous to the use of the strap, links had been used; some in the form of a chain and others rigid straps with a link at each end. In the McGowen patent the straps flex materially throughout their length and without undue wear or tension at any point. I am of the opinion the combination of spring strap and rigid frame connection in the McGowen patent presents sufficient novelty and progress over the prior art to support a patent. Barbed Wire Patent, 143 U.S. 275, 293, 12 S.Ct. 443, 450, 36 L.Ed. 154; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 445, 31 S.Ct. 444, 55 L. Ed. 527; Smith v. Snow, 294 U.S. 1, 23, 55 S.Ct. 279, 79 L.Ed. 721; Eibel Process Company v. Minnesota Paper Company, 261 U.S. 45, 71, 43 S.Ct. 322, 67 L.Ed. 523; Dow Chemical Co. v. Williams Bros. Well Treating Corporation (C.C.A. 10 Circuit) 81 F.(2d) 495, 502; Callison v. Pickens (C.C.A.) 77 F.(2d) 62; Chicago Lock Company v. Tratsch (C.C.A.) 72 F. (2d) 482, 487; Hoeltke v. C. M. Kemp Mfg. Co. (C.C.A.) 80 F.(2d) 912; Wine Ry. Appliance Co. v. Baltimore & O. R. Co. (C.C.A.) 78 F.(2d) 312; Remington-Rand B. Service v. Acme Card System Company (C.C.A.) 71 F.(2d) 628; Western Electric Company v. La Rue, 139 U.S. 601, 11 S.Ct. 670, 35 L.Ed. 294.

I now turn to design patent No. 91,997. I have no difficulty in reaching the conclusion from the evidence and the exhibits that the defendant's glider is not an infringement of this patent. The true test of infringement of a design patent is whether the two when standing side by side have substantially the same effect on the eye of the ordinary observer, giving such attention to the matter as purchasers usually give. An inspection of each of the gliders by a prospective purchaser would disclose nothing but a similarity, that is to say, such person would conclude that each was a glider, but a casual inspection would show there was a marked difference in their design. In the case of Applied Arts Corporation v. Grand

648

Rapids Metalcraft Corporation (C.C.A.6) 67 F.(2d) 428, 430, the court said: "To hold that general configuration made necessary by function must give to a patented design such breadth as to include everything of similar configuration, would be to subvert the purpose of the law, which is to promote the decorative arts rather than to effectuate it."

There is no likelihood that any person reasonably acquainted with the design of gliders would purchase the defendant's glider believing he was buying the plaintiff's. Structurally they are the same, but the design is materially different. Under such a state of facts there could be no infringement by the defendant of the design patent of the plaintiff. Compare Illinois Watch Case Co. v. Hingeco Mfg. Co. (C.C.A.) 81 F.(2d) 41, 48; Gorham Mfg. Company v. White, 14 Wall.(81 U. S.) 511, 531, 20 L.Ed. 731.

In view of my conclusion that there is no infringement of the design patent by the defendant, it becomes unnecessary for me to pass on its patentability.

The bill of complaint will be dismissed in so far as it relates to an infringement by the defendant of design patent No. 91,-997. A decree may be entered in favor of plaintiff against the defendant, with injunction, cost, and usual order of reference in so far as the action relates to structural patent No. 1,959,032. The decree will be settled on notice. Parties will submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by rule 70½ of the Equity Rules, as amended (28 U.S.C.A. following section 723).