**MAN–SEW PINKING ATTACHMENT CORPORATION v. CHANDLER MACH. CO. et al.**

No. 164.

District Court, D. Massachusetts.

June 21, 1940.

---

Allan. B. Bagley and Herbert A. Baker, both of Boston, Mass., and M. C. Lyddane, of New York City, for plaintiff.

J. Preston Swecker and Cyrus Kehr & Swecker, all of Washington, D. C., for defendants.

McLELLAN, District Judge.

The plaintiff, a manufacturer of pinking machines, alleges that the defendants, who are respectively a competitor and two of its officers, are threatening the plaintiff and its customers with suits for infringement of certain patents, and seeks a declaratory judgment to the effect that these patents, U. S. No. 1,984,224 and U. S. Design No. 112,121, are invalid for various reasons, and are not infringed by the plaintiff. Unfair competition is also alleged as a basis for relief. In their answer, the defendants set up a counterclaim, admitting that the patents in question were issued to the defendant William T. Maxant, alleging that he is the owner of these patents, that they are infringed by the plaintiff, and asking an injunction and an accounting for profits and damages for such infringment. The counterclaim also alleges unfair competition on the part of the plaintiff, for which relief is sought. To this counterclaim, the plaintiff filed an answer, setting up the usual defenses, including lack of invention, anticipation and denial of infringement as to both patents. The case was tried upon a stipulation as to some of the facts and upon oral and written evidence.

U. S. Patent No. 1,984,224.
Findings of Fact.

The plaintiff, Man-Sew Pinking Attachment Corporation, is a New York corporation. The defendant, Chandler Machine Company, is a Massachusetts corporation. The individual defendants are officers of the Chandler Machine Company.

U. S. Patent No. 1,984,224 was issued December 11, 1934 to the defendant William T. Maxant, on an application filed August 17, 1933. The patent purports to cover an improvement in pinking machines. Pinking machines, which are old, are designed to cut cloth in such a way that a notched edge is produced, rather than a straight one. Such a notched edge is not only for ornament, but serves a useful purpose in the manufacture of dresses and other similar garments. As stated in the patent, the object of the improvements shown therein is to provide a pinking machine which will lie approximately flat on a table, or which may be dropped into the place cut out in a sewing machine stand to receive the sewing machine itself, thus making unnecessary either a separate stand or a separate source of power. Broadly speaking, the machine as shown consists of a base or operating plate, a notched wheel, known as the pinker wheel mounted on this plate, operating in conjunction with a roller mounted under the plate, and protruding through it so as to touch the pinker wheel, against which it is held by a spring also mounted underneath the plate, a shaft and a set of gears, enclosed in a gear box and a fly wheel by means of which power can be transferred through the gears to the pinker wheel. As shown in the patent, the operating plate, fly wheel guard, gear box, and sleeve surrounding the pinker shaft are all cast in one integral piece. The pinker wheel cooperates with the roller which protrudes through a hole or orifice in the operating plate to do

the pinking. This roller turns idly as material is fed between it and the pinker wheel. The roller is mounted in an anvil cradle, pivoted at one end by means of a pin between a pair of depending lugs. The roller, so mounted, is held in contact with the pinker wheel by means of a flat spring, mounted on a fulcrum near its middle, with one end pressing upwards against the anvil cradle in which the roller is mounted, and the other end pressing upwards against a screw, mounted through the operating plate. By means of this screw, the pressure of the spring on the roller may be varied by the operator of the machine. Oil reservoirs are provided in the anvil cradle in which some sort of wicking is placed to make frequent oiling unnecessary. The machine is further provided with a combined cutter guard and stripper, consisting of a heavy wire mounted around the pinker wheel, but not touching it, thus avoiding injury to the operator and at the same time preventing waste material from winding on the wheel. Adjustable clamps are provided so that the machine may be secured in any standard sewing machine cut out, simply by removing the sewing machine and dropping the pinking machine in its place, and adjusting the clamps. The machine then receives its power by means of the sewing machine belt from whatever source is provided for the sewing machine.

In their counterclaim, the defendants assert that claims 2, 3, 6, 7, 8 and 9 of the patent are infringed, but in their brief, they state that their charges of infringement of claim 3 are withdrawn. The claims thus remaining in suit follow:

"2. The combination with an operating plate, an anvil cradle pivotally connected therewith, a roller rotatably supported by the anvil cradle, a spring-plate having a fulcrum on the operating-plate, and having one end bearing against the anvil cradle, and adjustable means connected with the operating plate for regulating the tension upon the plate spring and against the anvil cradle.

"6. In an attachment for sewing-machines, the combination with a table having a cut-out therein to receive a portion, at least, of the sewing-machine works, of an operating plate and clamps connected therewith and constructed to be adjusted and adapted to be snugly secured against the opposite edges of the cut-out of the machine table.

"7. A pinking machine including an operating plate, a gear-box, fly-wheel guard and sleeve, all cast in one integral piece, in combination with a shaft journaled in the sleeve, a fly-wheel housed within the fly-wheel guard for transmitting rotary motion to the shaft, a pinker secured to the shaft, a roller co-operating therewith, and a device for exerting pressure against the roller.

"8. The combination with a table top having an opening or cut-out portion, of a pinker including an operating-plate adapted to fit approximately flush with the upper surface of the table, and clamps adjustably connected with the lower surface of the plate and adapted to be secured against the opposite edges of the cut-out or opening, said clamps located wholly beneath the operating-plate.

"9. The combination of an operating plate, a pinker rotatably supported thereon, an anvil cradle pivotably connected with the operating plate, a roller rotatably supported by the anvil cradle and co-operating with the pinker, a stiff plate-spring supported by the operating plate, with one end in position to engage the cradle, and means adjustably connected with the operating plate for exerting pressure upon the plate-spring, whereby to regulate its pressure upon the anvil cradle."

As early as the year 1925, one Alexander J. Mitchell began manufacturing a pinking machine in Boston. This machine was primarily the invention of an employee of Mitchell named Ogden. Mitchell continued to manufacture and sell it commercially until 1932. On December 5, 1932, the defendant William T. Maxant, for himself or for the defendant, Chandler Machine Company, purchased from Alexander J. Mitchell the so-called "manufacturing rights" in this machine. As in the case of the machine disclosed in the defendants' patent, Mitchell's pinking machine was designed to fit in a sewing machine cut out. It had the same pinker wheel and roller, the same shaft and supporting sleeve, the same gears and gear box, the same fly wheel and fly wheel guard, and the same mechanism for mounting the roller, and exerting pressure on it to keep it in contact with the pinker wheel. It differed from the machine shown in the patent in that the operating plate was in two pieces, the portion through which the roller protruded being a loose plate connected by screws to the rest of the ma-

chine. It had no guard or stripper over the pinker wheel.

After the purchase of the Mitchell machine, the defendant Maxant worked on it, and adopted the single integral casting described above, added clamps to hold the machine securely in the cut out, and added the combined cutter guard and stripper disclosed in the patent. These were the principal changes made by the defendant Maxant in the Mitchell machine prior to his application for the patent in suit.

The Mitchell machine was not cited in the Patent Office, and in fact was not known to the defendants' attorneys. The defendant Maxant, who was only twenty-four years old at the time, thought in good faith that having purchased the Mitchell machine, he was entitled to a patent upon the entire machine as redesigned by him. His attorneys did not discover the true facts until the present litigation had started. On February 13, 1940, a disclaimer was filed, reading:

"Disclaimer filed February 13, 1940, by the patentee.

"Hereby enters this disclaimer to that part of the claims in said specification, as follows:

"By disclaiming from claim 1, any combination in a pinking machine that does not include a housing on the operating plate enclosing the pinker shaft and the gearing therefor and extending continuously from a point adjacent the pinker to a point beyond the opposite end of said shaft and the driving gearing thereof;

"By disclaiming from claim 2, the combination thereof, except wherein the operating plate has a pinker shaft mounted thereon in an integral housing extending continuously from a point adjacent the pinker thereon to a point beyond the opposite end of said shaft and enclosing the major portion of the length thereof and the gearing and driving wheel thereof;

"By disclaiming from claim 3, any combination thereof except where the oil wells in the anvil cradle form reservoirs beside the bearings of the roller shaft in the anvil cradle and communicate respectively with said bearings to supply lubricant thereto;

"By disclaiming from claim 9, any pinking machine except wherein the operating plate has mounted thereon an integral housing enclosing the major portion of the length of the shaft carrying the pinker and extending continuously from a point adjacent the pinker to a point beyond the opposite end of the shaft, enclosing therein also the gearing and driving wheel for said shaft."

The plaintiff, in its attack on the patent in suit relies primarily on the Mitchell machine, as described above. But a number of prior art patents were duly cited and adduced in evidence. In view of the decision reached herein, it would serve no useful purpose to describe any of these patents in this opinion.

In the latter part of 1936, and thereafter, the plaintiff began to manufacture a flat bed power pinker of the same general type as described in the patent in suit. The housing on this machine is shaped somewhat differently, and the tension on the roller is varied by means of a knob on the side of the housing, rather than by directly adjusting the screw pressing against the end of the spring opposite from the roller mounting. Also, the housing is bolted to the operating plate, instead of being cast all in one piece with the operating plate, as in the defendants' machine. The operating plate itself, however, in the plaintiff's machine is all cast in one piece. The plaintiff's machine employs a horizontal clamping bar to hold its machine in the sewing machine cut out. This is quite different from the clamping device used by the defendants, which acts on the side walls of the cut out. The plaintiff employs a so-called feed wheel, which is an additional wheel mounted adjacent to the pinker wheel, which serves to feed the material being cut under the pinker wheel. No such device is used by the defendants. The plaintiff continues to manufacture its machine in this form.

## Conclusions of Law.

I conclude that the attempted disclaimer as applicable to claims 2 and 9 now in suit is void, and that as a result these claims may not be made the basis for further protection. By attempting to disclaim, as from claim 9 "any pinking machine except wherein the operating plate has mounted thereon an integral housing enclosing the major portion of the length of the shaft carrying the pinker and extending continuously from a point adjacent the pinker to a point beyond the opposite end of the shaft, enclosing therein also the gearing and driving wheel for said shaft", the defendant Maxant clearly tried

to add other features to the combination and not merely to limit the monopoly previously claimed. Thus he brought himself within Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 460, 79 L.Ed. 1005, where under similar circumstances, it is said: "While this statute affords a wide scope for relinquishment by the patentee of part of the patent mistakenly claimed, where the effect is to restrict or curtail the monopoly of the patent, it does not permit the addition of a new element to the combination previously claimed, whereby the patent originally for one combination is transformed into a new and different one for the new combination."

The court then goes on to hold that where a patentee attempts to limit a claim by an invalid disclaimer, such claim may not afterwards be revived, with its presumption of validity.

As to the remaining claims, 6, 7 and 8, they add little or nothing to the Mitchell machine, except for the use of clamps to hold the machine better in the cut out, and the integral construction of the operating plate and the gear and fly wheel housing referred to above. These changes clearly do not rise to the level of patentable invention. The substitution of one part for what was formerly two does not ordinarily constitute invention. Fezzey v. Bemis Bros. Bag Co., 8 Cir., 1 F.2d 116; Kirsch Mfg. Co. v. Gould Mersereau Co., 2 Cir., 6 F.2d 793; Howard v. Detroit Stove Works, 150 U.S. 164, 14 S.Ct. 68, 37 L.Ed. 1039. These claims are invalid and cannot serve as a basis for legal protection.

In view of the invalidity of the claims on which the defendants rely, it is unnecessary to determine here the question of infringement.

### Design Patent No. 112,121.
### Findings of Fact.

This design patent was issued to William T. Maxant November 8, 1938, on an application filed August 17, 1938. The claim is for "the ornamental design for a pinking machine as shown". The machine shown in the patent drawing is a later model of the machine purporting to be covered in the defendants' mechanical patent discussed above. In this drawing, the gear housing starts from the side wall of the fly wheel covering, tapering off in a straight line until the other end of the

housing surrounds the pinker wheel itself. The operating plate is shown as beveled off on three sides, the fourth being cut away to receive the fly wheel and belt. A cloth guide extends transversely across the operating plate, and is held by two adjustable screws, one on each side of the gear housing.

As above stated, the plaintiff's machine is similar mechanically to that of the defendant. It has the same essential parts, and is designed to fit into the same sort of cut out. Consequently, the machines look somewhat alike, though they are by no means identical. In the plaintiff's machine, the gearing and drive wheel are covered by a dome-shaped housing, the wide end covering the drive wheel and the housing rounding off, until at the other end it is just large enough to cover the pinker shaft. The narrow end of the housing does not cover the pinker wheel itself, as in the defendant's patent. The plaintiff provides a separate guard for the pinker wheel which is of bright metal, not painted, and is somewhat larger in circumference than the narrow end of the gear housing which it adjoins. The plaintiff's operating plate is not beveled on the edge opposite from the drive wheel; it is beveled on both of its side edges, however. In the plaintiff's machine, the tension of the roller against the pinker wheel is adjusted by a knob mounted on the side of the dome-shaped gear housing, rather than, as in the defendants' machine, by means of a screw mounted on the operating plate. Moreover, the plaintiff uses a cloth guide extending only half way across the operating plate rather than all the way across. The two machines are not so much alike as to present the same appearance "to the eye of the ordinary observer giving such attention to the matter as purchasers usually give."

### Conclusions of Law.

The machine manufactured by the plaintiff does not infringe design patent No. 112,121.

In the determining infringement of a design patent, the question is whether the alleged infringing design has the same appearance to general observers interested in the subject, or to prospective purchasers. Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L.Ed. 731; Harris & Schafer, Inc. v. Curtiss Aerocar Co., Inc., 5 Cir., 69 F.2d 264; American Fabrics Co. v. Richmond

Lace Works, 2 Cir., 24 F.2d 365; Walker on Patents, Dellar Ed., Sec. 141. As stated in Illinois Watch Case Co. v. Hingeco Mfg. Co., 1 Cir., 81 F.2d 41, 45, "the test of infringement of a design is whether the two designs have substantially the same effect on the eye of the ordinary observer giving such attention to the matter as purchasers usually give." Applying this test to the case at bar, infringement is not shown. The two machines present a substantially different appearance to the ordinary observer or prospective purchaser. Such similarity as exists is due to the functional requirement of this type of pinking machine, and as stated in Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 6 Cir., 67 F.2d 428, 430, "to hold that general configuration made necessary by function must give to a patented design such breadth as to include everything of similar configuration, would be to subvert the purpose of the law, which is to promote the decorative arts rather than to effectuate it."

In view of the plaintiff's non-infringement, it is unnecessary to determine whether the defendant Maxant's design patent possesses such novelty and originality as to make it valid.

### Alleged Unfair Competition By the Defendants.

### Findings of Fact.

The defendant, Chandler Machine Company, by letter dated December 28, 1938, charged the plaintiff with infringement of "our mechanical and design patents". Defendants' attorneys first charged the plaintiff with infringement of the particular patents in suit by a letter dated January 5, 1939. Some time early in 1939, and prior to the filing of this suit, the defendant Chandler Machine Company, acting in good faith and with the knowledge and approval of its officers and upon advice of counsel, mailed about 250 or 300 letters to supply houses and dealers in the trade. The following letter, adduced in evidence, is typical of these letters:

"Green & Rankin
"233 W. 26th St.
"N Y C
"Gentlemen:

"We have been advised by our patent attorneys that the power pinking machine now offered for sale by Man-Sew Pinking Attachment Corporation is an infringement of our design and mechanical patents on our Chandler High Speed Flat Bed Pinking Machine.

"We are preparing to file suit in the United State District Court against Man-Sew Pinking Attachment Corporation to enjoin them from further infringement of our patents and for damages.

"We are informing the trade of our action in this matter because any person who sells or uses an infringing machine is also infringing and may be enjoined by the Federal Court and held responsible for damages.

"While people may imitate our products, do not be misled by substitutes for Genuine Chandler equipment which has enjoyed world-wide popularity for the past thirty years.

"Very Truly yours,
    "Chandler Machine Company
"WM :MF
"New York Office:
"Chandler Sales & Service Company
"245 Seventh Avenue Telephone Watkins 9-0646"

As a result of this letter, several orders for the plaintiff's machines were cancelled.

On January 22, 1938, Richard Maxant, an officer of Chandler Machine Company, wrote the following letter, which he left in the plant of a customer where he found one of the Man-Sew machines on trial. The letter, which is in long hand, was eventually handed to Mr. Victor J. Sigoda, the president of the plaintiff corporation, to whom it was addressed.

    "Chandler Machine Co.
    "Ayer Massachusetts
    "U. S. A.
        "Jan. 22—1938.
"Dear Victor:

"An surprised at you making a pinking mch. Do you want us to make a good pink-stitch mch?

"If you have any good ideas, let us know and save your $$
    "Regards,
        "Your friend
            "Dick Maxant."

The defendant William T. Maxant had prepared by his counsel, and signed, a complaint, for filing in the United States District Court for the Southern District of New York. The complaint bears the date February 25th, 1939. The present action was commenced March 7, 1939, and service was had on the following day on the defendants. Accordingly the complaint in

956

the New York action was not filed. The foregoing findings and conclusions as to the invalidity of the claims in suit of the first patent and the non-infringement of the second patent are here incorporated by reference.

## Conclusions of Law.

■ It is well settled that sending notices of infringement to a manufacturer's customers in bad faith and without intention of bringing suit, but solely to injure the manufacturer's business, will be enjoined. Adriance Platt & Co. v. National Harrow Co., 2 Cir., 121 F. 827; A. B. Farquhar Co., Ltd. v. National Harrow Co., 3 Cir., 102 F. 714, 49 L.R.A. 755; Gerosa v. Apco Mfg. Co., 1 Cir., 299 F. 19; United States G. & P. E. Corp. v. Hanson-Van Winkle, etc., Co., 4 Cir., 104 F.2d 856. But in the present case, the evidence shows only one circular sent in good faith and on advice of counsel to supply houses and dealers in the trade. The fact that one of the patents is now found to be invalid and the other not infringed, does not, under the circumstances heretofore found, require a finding of bad faith or malice. See Heuser v. Federal Trade Commission, 7 Cir., 4 F.2d 632; Alliance Securities Co. v. De Vilbiss Mfg. Co., 6 Cir., 41 F.2d 668; Oil Conservation Engineering Co. v. Brooks Engineering Co., 6 Cir., 52 F.2d 783; United States G. & P. E. Corp. v. Hanson-Winkle, etc., Co., supra. The plaintiff's charge of unfair competition by the defendants is not sustained.

## Alleged Unfair Competition By the Plaintiff.

### Findings of Fact.

■ The defendant Chandler Machine Company began merchandising its machine in 1933. At that time, the machine was and it still is known as the Chandler flat bed power pinker. Each working part was given a number. These numbers were used with the prefix FP. Thus the bed plate casting bears the designation FP-1. The gear housing is called FP-5 in all machines. The various parts are so listed in catalogues. The initials were derived from the name "flat bed pinker". Because of these markings, the defendants' machine was sometimes referred to as the FP machine.

The plaintiff's machine, adduced in evidence, bore the legend, stamped on the clamping bar, "FP-5-38". Other machines of the plaintiff bore similar markings. The plaintiff's president, Victor J. Sigoda, testified and I find that the letters referred to the words "feed pinker" by which the machine was described in advertising, and the numeral 5 meant that it was the fifth model of the machine. He further testified and I find that the letters were original with him and were not copied from the defendants' machines. If a question of fact is here presented, I find that the plaintiff acquired no exclusive right to use the letters FP standing as they may either for "flat-bed pinker" or for "feed pinker", unless they had acquired a "secondary meaning" in the sense that their primary significance in the minds of the public had become not the product but the producer. And I do not find that the letters FP had acquired any such secondary meaning.

No serious confusion arose from the similarity of these markings. As stated above, the two machines bear a substantially different appearance to the eye of the ordinary observer. The defendant William T. Maxant testified to one or two instances of confusion, but such confusion does not appear to have resulted particularly from the use of the similar letters of designation. The machines of both parties are plainly marked on the outside with the names of their respective manufacturers. I find that, considering the machines as a whole, including their differences in construction, and all their markings, the plaintiff's machine does not so resemble that of the defendants as to deceive an ordinary purchaser.

## Conclusions of Law.

As stated in Illinois Watch Case Co. v. Hingeco Mfg. Co., 1 Cir., 81 F.2d 41, 45, referred to above, "the essence of unfair competition is fraud, which is a question of fact, and it is sufficient to make out a case to show that the natural and probable result of defendants' conduct is to deceive ordinary purchasers buying under ordinary conditions into believing that they are purchasing the goods of one manufacturer for those of another." Such a case was not made out here. Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

The defendants are not entitled to relief in connection with the plaintiff's use of the letters FP.

Since the evidence in this case leaves no doubt of the existence of an actual controversy within the meaning of the Declaratory Judgment Act, U.S.C., Title 28, Section 400, 28 U.S.C.A. § 400, the plaintiff is entitled to a judgment declaring claims 2, 6, 7, 8 and 9 of U. S. Patent No. 1,984,224 invalid, reciting that these are all the claims thereof on which the defendant relied, declaring U. S. Design Patent No. 112,121 uninfringed, denying the plaintiff relief for unfair competition, and dismissing the defendants' counterclaim.